Commonwealth *v.* D'Avella.

COMMONWEALTH *vs.* VINCENT M. D'AVELLA.

Suffolk.    October 5, 1959. — November 3, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, &
WHITTEMORE, JJ.

*Evidence*, Blood grouping test, Of nonpaternity, Judicial notice. *Bas-
    tardy. Words*, "Admissible in evidence."

At the trial of a complaint for getting a woman with child in violation of
    G. L. c. 273, § 11, a blood grouping test under § 12A properly made by
    a qualified expert, of undisputed accuracy, and definitely excluding
    the defendant as the father of the child was not evidence merely to be
    given such weight as the trier of fact saw fit but as matter of law con-
    clusively proved the defendant's nonpaternity and required a finding
    of not guilty notwithstanding other evidence warranting a finding of
    guilty. [644–646]
This court took judicial notice of scientific opinion that a blood grouping
    test definitely excluding a putative father of a child is conclusive proof
    of his nonpaternity. [645–646]

COMPLAINT, received and sworn to in the District Court of Chelsea on April 23, 1958.

On appeal to the Superior Court the case was heard without jury by *Kalus,* J., a District Court judge sitting under statutory authority.

*John F. Lombard,* (*Francis J. Burns* with him,) for the defendant.

*Kevin H. White,* Assistant District Attorney, for the Commonwealth.

SPALDING, J. This is a complaint originally brought in a District Court charging the defendant with getting the complainant with child in violation of G. L. c. 273, § 11. From a finding of guilty the defendant appealed. At the trial in the Superior Court the defendant, having waived a jury, was tried to a judge and was found guilty.

The complainant testified that she had known the defendant about ten years; that she had intercourse with him regularly in 1956; that her last menstrual period was in August, 1956; that she told the defendant of her pregnancy one month after she learned of it; that the defendant when so informed suggested a name for the child, if a girl; and that the child was born on June 2, 1957.

Twice on cross-examination the complainant testified that between April, 1956, and "after September, 1957," she did not see the defendant. But in response to questions by the judge she stated "she had relations with the defendant in July and August of 1956."

The defendant testified that he had had sexual relations with the complainant but not after April, 1956.

A blood grouping test was made under the provisions of G. L. c. 273, § 12A, inserted by St. 1954, c. 232, and it was agreed by counsel before trial that the report of the test was to be "put in evidence" and was "to be effective for all purposes under the law." The report was introduced in evidence.

Dr. A. Richardson Jones, a hematologist of long experience and the author of the report, described how the tests were made and confirmed the facts set forth in the report.

These facts excluded the defendant as the father. Dr. Jones both on the stand and in his report stated unequivocally that on the basis of the tests the defendant could not be the father of the complainant's child.

The Commonwealth concedes that the tests were properly made by a qualified expert.

The sole question for decision arises out of the denial of several requests presented by the defendant which in effect asked the judge to rule that the defendant was entitled by reason of the blood tests to a "not guilty" finding as matter of law. Stated differently, the question is this: In a proceeding charging a defendant with begetting a child and where there is evidence, apart from the blood tests, warranting a finding of guilty, but the blood tests (the accuracy of which is not in dispute) exclude the defendant as the father, is the defendant entitled to a finding in his favor as matter of law? The question is one of first impression in this Commonwealth.

General Laws c. 273, § 12A, provides, in part, "In any proceeding to determine the question of paternity, the court, on motion of the defendant, shall order the mother, her child and the defendant to submit to one or more blood grouping tests, to be made by a duly qualified physician or other duly qualified person, designated by the court, to determine whether or not the defendant can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where definite exclusion of the defendant as such father has been established."

The Commonwealth argues that the language "admissible in evidence" found in § 12A manifests a legislative intent that the results of the blood tests be treated on the same footing as other evidence and be accorded such weight as the trier of fact sees fit to give them. That, of course, is the usual situation where evidence is introduced. Except for the provisions of § 12A as to the right of the defendant to require blood tests to be made under order of the court, that section is merely declaratory of the common law, for apart from statute blood grouping tests are admissible when

paternity is in issue, at least when the tests show a definite exclusion of the putative father. That was made clear in the recent case of *Commonwealth* v. *Stappen,* 336 Mass. 174. See McCormick on Evidence, § 178. Section 12A does not undertake to determine the evidentiary effect to be accorded to the tests when they are put in evidence. This determination is left to the court which under its inherent and traditional power must decide what effect is to be given to evidence. *Lamoureux* v. *New York, N. H. & H. R.R.* 169 Mass. 338, 340 (record of conviction is conclusive and cannot be explained when offered to affect credibility). *Matter of Welansky,* 319 Mass. 205, 209 (in disbarment proceeding record of conviction is conclusive of fact of commission of crime). *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 139 (regulation by board of health that bakery products be wrapped was conclusive and court judicially noticed that no evidence which could have been introduced could prove it unreasonable). *Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 757–758 (charter of charitable corporation prima facie evidence of its charitable purpose).

Here we have definite evidence based on blood tests, the integrity of which is conceded, excluding the defendant. To hold in the light of such evidence that it was still open to the trier of fact to find that the defendant was the father would be egregiously unrealistic. The reliability of such tests to prove nonpaternity is well established as a scientific fact.[1] Evidence which is regarded and acted upon every day as conclusive by skilled scientists outside of court ought not to be treated merely as some evidence (to be believed or disbelieved as the trier of fact sees fit) when it is adduced in court. We cannot close our eyes to the overwhelming weight of scientific opinion on this subject and we take judicial

---

[1] A. S. Wiener, 24 Journ. of Immunol. 443. Ottenberg, Hereditary Blood Qualities, 6 Journ. of Immunol. 363. W. C. Boyd, Protecting the Evidentiary Value of Blood Group Determinations, 16 So. Cal. L. Rev. 193, 197. H. B. Galton, Blood-Grouping Tests and their Relationship to the Law, 17 Ore. L. Rev. 177. Hooker and Boyd, Blood-Grouping as a Test of Non-Paternity, 25 Journ. of Crim. Law, 187. A. S. Wiener, Blood Grouping Tests in the New York Courts, 70 U. S. L. Rev. 683. A. S. Wiener, 186 Am. Journ. Med. Sci. 257. Schatkin, Disputed Paternity Proceedings.

notice of it. For a discussion of the biological principles involved in ascertaining exclusion see Wigmore on Evidence (3d ed.) § 165b; McCormick on Evidence, § 178; 163 A. L. R. 939, 941–943. In bastardy proceedings the evidence is usually very unsatisfactory. Because of the nature of the case it is generally the mother's word against that of the defendant; corroborating evidence is seldom available. The case at bar, apart from the blood test evidence, is a good illustration. When science acquires knowledge whereby the ascertainment of the truth in these cases is certain, courts ought not to ignore such knowledge; on the contrary they should welcome it.

While all courts, so far as we are aware, either by statute or apart from statute, admit blood grouping tests as proof of nonpaternity, they are not in agreement as to the effect of such evidence. We are concerned only with situations where, as here, there is no dispute concerning the accuracy of the tests. Some courts have held that the tests are merely evidence and their weight is to be determined by the trier of fact. *Commonwealth* v. *Hunscik*, 182 Pa. Super. Ct. 639, 643. See *Commonwealth* v. *Wright*, 383 Pa. 532, 536; *State* v. *Holod*, 63 Ohio App. 16; *Ross* v. *Marx*, 24 N. J. Super. Ct. 25 (but compare *Cortese* v. *Cortese*, 10 N. J. Super. Ct. 152); *Berry* v. *Chaplin*, 74 Cal. App. 2d 652; *Arais* v. *Kalensnikoff*, 10 Cal. 2d 428.[1]

On the other hand there are decisions that hold the contrary or point in that direction. *"C."* v. *"C."* 200 Misc. (N. Y.) 631. *Commissioner of Welfare of N. Y.* v. *Costonie*, 277 App. Div. (N. Y.) 90. *Jordan* v. *Mace*, 144 Maine, 351. In the case last cited, where the statute under which the test was admitted was similar to ours, the jury found against the defendant, the putative father. There was no dispute with respect to the integrity of the tests. In ordering a new trial the Supreme Judicial Court of Maine in a well reasoned

---

[1] The result reached in California was doubtless due to a provision in its Code of Civil Procedure that no evidence was conclusive unless made so by the code. The above cases are no longer law in California by reason of its adoption of the uniform act on blood tests which makes the tests conclusive. Cal. Code of Civil Procedure, §§ 1980.1–1980.7.

opinion said, "If the jury may disregard the fact of non-paternity shown here so clearly by men trained and skilled in science, the purpose and intent of the Legislature, that the light of science be brought to bear upon a case such as this, are given no practical effect" (p. 354).

It is significant that in Pennsylvania where, under a statute similar to ours, evidence of exclusion is not to be accorded conclusive effect it has been held, nevertheless, in two very recent cases that verdicts contrary to tests showing exclusion were against the weight of the evidence and must be set aside. *Commonwealth* v. *Coyle,* 190 Pa. Super. Ct. 509. *Commonwealth* v. *Gromo,* 190 Pa. Super. Ct. 519.

It is also of significance that the uniform act on blood tests, which has been adopted in California, New Hampshire, and Oregon, provides that tests showing exclusion shall be conclusive on the issue of paternity. In their notes to the act the commissioners state, "In paternity proceedings, divorce actions and other types of cases in which the legitimacy of a child is in issue, the modern developments of science have made it possible to determine with certainty in a large number of cases that one charged with being the father of a child could not be. . . . If the negative fact is established it is evident that there is a great miscarriage of justice to permit juries to hold on the basis of oral testimony, passion or sympathy, that the person charged is the father and is responsible for the support of the child and other incidents of paternity. . . . The conclusion [showing exclusion] should be final if there is no dispute among the experts. . . . [T]his is one of the few classes of cases in which judgment of court may be absolutely right by use of science." 9 Uniform Laws Annotated, pp. 102–103. With these views we are in agreement and we are of opinion that they are indicative of the trend, both decisional and legislative, on this subject. See McCormick on Evidence, § 178; 46 A. L. R. 2d 1000, 1028 et seq.

It follows that the judge erred in refusing to grant the defendant's requests and the defendant's exceptions must be sustained.

*So ordered.*