COMMONWEALTH vs. JOSEPH A. BLAZO.

Suffolk. June 13, 1980. — July 22, 1980.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Evidence,* Blood grouping test, Nonpaternity. *Practice, Criminal,* Attendance of witnesses.

At the trial of a defendant charged with fathering an illegitimate child in violation of G. L. c. 273, § 11, the judge did not err in denying a motion by the defendant, who had previously received a variety of red blood cell tests, for an order directing that the Human Leukocyte Antigen white blood cell test be administered to the defendant, mother, and child where, at the time of trial, the reliability and general acceptance of the test had not been established. [325-327]

In view of the high level of accuracy now attained from the Human Leukocyte Antigen white blood cell test and its recognition and general acceptance by the scientific and medical community, in any contested paternity case arising after the date of this opinion when the putative father requests the test, the judge should carefully consider in the exercise of his or her sound discretion ordering its administration to the father, the mother, and the child. [327]

At the trial of a defendant charged with fathering an illegitimate child in violation of G. L. c. 273, § 11, the judge did not abuse his discretion in refusing to issue a bench warrant for a witness who had been served with subpoenas and who had failed to appear in court on two occasions where the witness's expected testimony would be merely cumulative of other available testimony to the same effect. [328]

COMPLAINT received and sworn to in the Municipal Court of the City of Boston on March 20, 1973.

On appeal to the Superior Court a motion for an additional blood grouping test was heard by *Glynn,* J., a Municipal Court judge sitting under statutory authority.

The case was tried before *Banks,* J., a District Court judge sitting under statutory authority.

*Charles E. DeWitt, Jr.,* of Texas & Louisiana, for the defendant.

*William R. Wilson,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with him) for the Commonwealth.

GREANEY, J. On March 10, 1977, the defendant was found guilty by a Superior Court jury of fathering an illegitimate child in violation of G. L. c. 273, § 11, prior to its repeal by St. 1977, c. 848, § 7 (see now *Commonwealth* v. *MacKenzie,* 368 Mass. 613, 616-619 [1975]; G. L. c. 273, § 12, as amended by St. 1977, c. 848 § 5). The two issues presented upon appeal through the defendant's substitute bill of exceptions are: (a) whether the trial court abused its discretion in refusing to order the Human Leukocyte Antigen (HLA) white blood cell test for the defendant, mother, and child (which when combined with traditional red blood cell tests excludes paternity in approximately ninety-nine per cent of the males tested, see Lombard, Family Law § 691 [Supp. 1979]), where the defendant pursuant to G. L. c. 273, § 12A, had previously received a variety of red blood cell tests having a cumulative exclusion factor of approximately eighty per cent, see Lombard, Family Law § 691, at 669 (1967); and (b) whether the court abused its discretion in refusing to issue a bench warrant for the arrest of a witness who had ignored two subpoenas and who the defendant claimed had had sexual relations with the complainant during the relevant times. We affirm the conviction and the order denying the motion for a new trial.

1. There was no abuse of discretion in refusing to order additional blood tests for the defendant, the mother, and the child pursuant to G. L. c. 273, § 12A. See *Commonwealth* v. *D'Avella,* 339 Mass. 642, 644-646 (1959). See also *Blazo* v. *Superior Court,* 366 Mass. 141, 144, 145-146 (1974). The defendant was administered a series of red blood cell tests in 1973. At that time, utilization of such tests was the ordinary and accepted means of excluding paternity, where exclusion was possible. See Lombard, Family Law § 724, at 708-709 (1967) (for chart of factors tested in *D'Avella, supra*). The defendant's motion for an HLA test was considered and denied by the court in 1975,

before publication of forensic literature now cited to us by the defendant which touts the advisability of adding the HLA test to the more usual red blood cell analysis. See, *e.g.*, Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam. L.Q. 247, 283 (1976). In 1975, while ten European countries utilized the more accurate HLA tests for paternity testing (Lee, Current Status of Paternity Testing, 9 Fam. L.Q. 615, 624 [1975]), a seventy per cent chance of exclusion based upon red blood cell analysis was the norm in the United States. *Id.* at 633. In 1976, the joint AMA-ABA guidelines pointed out that "HLA typing is currently evolving so that the specificity of individual tests sera must be considered in establishing the reliability of the test results" and explained that because HLA factors varied according to "subpopulations within various geographic regions of the world," it was necessary to have "a determination of the racial and geographic origin of the subjects in order to calculate the probability of exclusion of paternity." Joint AMA-ABA Guidelines, *supra* at 274-276. The defendant did not renew his motion at the commencement of the trial in light of the newly available AMA-ABA guidelines on the subject. Moreover, the case was tried in 1977, before scientific evidence as to the high reliability of the HLA test was generally available. See Terasaki, Resolution by HLA Testing of 1000 Paternity Cases not Excluded by ABO Testing, 16 J. Fam. L. 543 (1978). Contrast Lombard, Family Law §§ 692, 694, 700, 725 (1967) with Lombard, Family Law § 691, § 692.5, at 258 ("The original text and prior supplements explain the blood grouping systems in use up to the introduction of the HLA system into this work"), § 694, and § 700, at 273 ("The chances of exclusion of paternity of a man falsely accused ha[ve] been determined to be over 99% as of June 1978, where all recognized and up-to-date tests have been performed") (Supp. 1979). The judge could have determined on the record before him at the time when he was asked to make this decision that the reliability of and general acceptance of the HLA test had not been estab-

lished. See *Commonwealth* v. *Fatalo*, 346 Mass. 266, 269-270 (1963), and cases cited; *Commonwealth* v. *Lykus*, 367 Mass. 191, 202 (1975); *Commonwealth* v. *Vitello*, 376 Mass. 426, 442-443 (1978). He was also warranted in relying upon the medical evidence offered in support of the defendant's motion in the form of a letter from a doctor at Peter Bent Brigham Hospital which stated that the HLA Antigen blood grouping test was not conclusive as to paternity and that there was "no guarantee . . . that the HLA typing will provide a definitive answer." Based on the foregoing, there was no error in the judge's conclusion that the defendant's rights "had been reasonably and adequately protected by the allowance of the previously granted blood grouping test[s]."

In view of the high level of accuracy now attained from the HLA test and its recognition and general acceptance by the scientific and medical community since the date of this trial, in any contested paternity case arising hereafter when the putative father requests[1] the HLA test, the judge should carefully consider in the exercise of his or her sound discretion ordering the administration of the HLA test to the defendant, the mother, and the child.

---

[1] It is also worth noting that in 1979 the Judicial Council of Massachusetts recommended against the passage of legislation which would have mandated the use of the HLA test in all paternity proceedings, whether or not requested by the father. See 1979 House Doc. No. 5501; Blood Grouping Tests (HLA) to Determine Paternity, Fifty-fifth Report of the Judicial Council, Pub. Doc. No. 144, at 31, 40 (1979). (The report notes that HLA is actually a tissue test, and that "eventually blood and tissue characteristics will be found to be as unique to a person as his or her fingerprints. But even today, no two people in a thousand will share exactly the same presently identifiable traits. [This] . . . makes it possible to compute a 'probability of paternity' index . . . ." *Id.* at 34.) The Council expressed serious concern as to possible constitutional questions under the Fourth and Fifth Amendments with regard to the proposed act if testing, instead of being allowed only on motion of the putative father, were mandated in all such proceedings and the test results used to establish the probability of paternity rather than being limited to proof of exclusion of paternity. *Id.* at 38-40. The report also points out that "[i]f it is desired only that the court may order the HLA test on motion of the alleged father, no legislation is necessary. Section 12A [of c. 273] already [so] provides . . . ." *Id.* at 38.

2. The judge did not abuse his discretion in refusing to issue a bench warrant for a witness who had been served with subpoenas and who had failed to appear in court on two occasions. A defendant's right to present witnesses in his own behalf is not absolute. *Commonwealth* v. *Blaikie*, 375 Mass. 601, 608 (1978). Instead, "where the expected testimony . . . is merely cumulative of other available testimony to the same effect . . ., the denial of process to obtain or compel the attendance of that individual involves an element of discretion on the part of the trial judge, and it is not in all cases a violation of the defendant's constitutional rights." *Commonwealth* v. *Watkins*, 375 Mass. 472, 489 (1978). See *Commonwealth* v. *Funderberg*, 374 Mass. 577, 580-581 (1978). See also *Commonwealth* v. *Dirring*, 354 Mass. 523, 529 (1968). See now Mass.R.Crim.P. 17(e), 378 Mass. 887 (1979) (providing that "[i]f a person served with a summons pursuant to this rule fails to appear . . . a warrant *may* issue to bring that person before the court" [emphasis supplied]). The defendant presumably expected to prove through the testimony of the reluctant witness that the complainant and the witness had had sexual relations during the period in which the complainant became pregnant (although the record is silent as to whether an offer of proof was made to the trial judge). Evidence of similar import buttressing the defendant's contention that he was not the father of the child was presented to the jury through the testimony of mutual friends of the parties, relatives of the defendant, and the wife of the reluctant witness. In particular, the judge's incisive questioning of the witness' wife served to establish the public engagement of the complainant and the witness for the relevant period, during which, other witnesses testified, the defendant had broken off relations with the complainant. Given the facts that the trial was already in progress when the defendant requested the warrant, and that the defendant made no indication to the trial court that the absent witness would add anything of substance to the defense already presented to the jury, the judge acted reasonably in denying the defendant's request.

3. An abuse of discretion has not been demonstrated in any other respect by the judge's denial of the motion for a new trial. *Commonwealth* v. *Breen,* 357 Mass. 441, 448 (1970). *Commonwealth* v. *Meuse,* 3 Mass. App. Ct. 189, 192 (1975). Other assignments of error raised in the defendant's substitute bill of exceptions have not been briefed and are deemed waived. *Commonwealth* v. *Watkins,* 375 Mass. at 474 n.2.

*Exceptions overruled.*

*Order denying motion for new trial affirmed.*