CLIFTON A. SYMONDS, THIRD, *vs.* JOYCE WILDER SYMONDS.

Franklin. December 10, 1981. — March 10, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Blood grouping test, Illegitimacy.

Results of blood grouping tests that definitely exclude a husband as the
    father of a child born to his wife are admissible in divorce and annul-
    ment proceedings and are not within the scope of the common law rule
    barring testimony by a husband or wife as to nonaccess between them
    where the legitimacy of a child born during their marriage is in issue.
    [542-545]
This court questioned the rule that a man who has had sexual relations
    with a woman before marriage to her may not obtain an annulment
    on the ground that he was fraudulently induced to marry her by her
    claim that he was the father of her unborn child or by her assertion
    that she was not pregnant when in fact she was pregnant by another
    man. [545-546]

COMPLAINTS for divorce filed on February 1, 1978, and
February 27, 1978, respectively, and a complaint for annul-
ment of marriage filed on November 21, 1978, in the Pro-
bate Court for the county of Franklin.

The cases were heard by *Keedy,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Jack D. Curtiss* for the plaintiff.

WILKINS, J.  The plaintiff husband (Clifton) appeals from
judgments in favor of the defendant wife (Joyce) on her
complaint for divorce and dismissing his complaints for
divorce and for annulment of their marriage.  The parties
were married on April 19, 1977, and Joyce gave birth to a
child on September 14, 1977.

Clifton contended that he was not the father of the child
and moved unsuccessfully at various times for an order

directing blood tests of the mother, the child, and himself. He contended that the test results would prove that he was not the child's father.[1] Clifton indicated the tests would be administered at his expense. The judge denied the motions, as he stated in his findings and rulings, "on the grounds that the Statute permitting blood grouping tests did not apply to divorce and annulment proceedings and that such testing would be a circumvention of Lord Mansfield's rule, *Sayles* v. *Sayles,* 323 Mass. 66 [1948]." We conclude that the evidence was not excludable for the reasons given by the judge.

We summarize the procedural and factual background set forth in the judge's findings and rulings. Clifton's complaint for divorce, his complaint for annulment, and Joyce's complaint for divorce were heard together. Clifton alleged in his complaint for annulment that he was fraudulently induced to marry Joyce by her false representation that he was the father of her unborn child. The judge dismissed Clifton's complaints and granted Joyce's complaint for divorce on the uncontested ground of cruel and abusive treatment. The judge ordered Clifton to pay support of $25 a week for the child.

The judge found that Joyce had not had sexual relations with anyone but Clifton after November, 1976. They had sexual relations on numerous occasions in the month of December, 1976. As a result of a pregnancy test, Joyce learned with certainty on February 1, 1977, that she was pregnant. Joyce told Clifton that they had four choices: (1) she could have an abortion; (2) they could be married; (3) they could place the child for adoption; or (4) she could bring up the child alone. They agreed to marry and were married on April 9, 1977. The child was a full term baby, born on September 14, 1977.

---

[1] For a discussion of the acceptability and the high level of accuracy attainable from blood testing as it bears on the question of excluding paternity, and for an indication of how a judge should treat a request for such tests, see *Commonwealth* v. *Blazo,* 10 Mass. App. Ct. 324, 325-327 (1980). The *Blazo* opinion was issued after the judgments were entered in these cases.

The judge found that Clifton did not deny his paternity until August, 1978, that Clifton was the father of the child, and that there was no fraud or misrepresentation that induced him to enter into the marriage.

If blood tests had been conducted and the results of the tests had shown that Clifton was not the father of the child, that evidence would have been relevant (a) on the question, in the annulment action, whether Joyce misrepresented to Clifton that he was the father of the child, and (b) on the question, in Joyce's divorce action, of Clifton's obligation to support the child. We do not say, however, that such evidence would have required the annulment of the marriage. Nor would such evidence have had any bearing on Joyce's complaint for divorce, except as to the question of child support. Because Clifton does not argue before us that the judge was in error in characterizing Joyce's complaint for divorce as uncontested, the only portion of the judgment in Joyce's divorce action directly involved in this appeal is the child support order.[2]

Results of blood grouping tests that definitely exclude a husband as the father of a child born to his wife are admissible even in the absence of statutory authority declaring their admissibility. We so held in *Commonwealth* v. *Stappen*, 336 Mass. 174, 176-177 (1957). See *Commonwealth* v. *D'Avella*, 339 Mass. 642, 644-645 (1959). In the *D'Avella* case, we held that the results of properly conducted, unchallenged tests excluding the defendant as the father of a child mandated a finding of not guilty in a nonsupport action. In addition, Rule 35 (a) of the Mass. R. Dom. Rel. P., paralleling Mass. R. Civ. P. 35, 365 Mass. 793 (1974), also authorizes a judge to order blood tests in a proceeding in

---

[2] Clifton's complaint for divorce, which was dismissed, seems academic at this point. He makes no argument showing how the results of blood grouping tests might have borne on his complaint for divorce. We, therefore, do not disturb the judgment dismissing Clifton's complaint for divorce.

If, of course, the marriage were to be annulled, the judgment on Joyce's divorce complaint would have to be vacated.

which the blood group of a person or persons is in controversy.[3] See *Beach* v. *Beach,* 114 F.2d 479, 482 (D.C. Cir. 1940).

We come then to the question whether the Lord Mansfield rule bars the introduction of the results of blood grouping tests in these proceedings. That rule states "that where the legitimacy of a child born in lawful wedlock is in issue, in the absence of statutory authority neither the husband nor the wife may testify as to non-access between them." *Sayles* v. *Sayles,* 323 Mass. 66, 67 (1948), quoting from *Taylor* v. *Whittier,* 240 Mass. 514, 515-516 (1922). The rule has been criticized;[4] it has never been followed by numerous jurisdictions in this country;[5] and it has apparently been

---

[3] Massachusetts R. Dom. Rel. P. 35 (a) states:

"PHYSICAL AND MENTAL EXAMINATION OF PERSONS

"(a) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

[4] "The policy of the rule has been severely criticized. See Wigmore on Ev. §§ 2063, 2064. But it has been too long settled in this Commonwealth to be changed by judicial decision." *Sayles* v. *Sayles, supra* at 67, again quoting from *Taylor* v. *Whittier, supra* at 516. The criticisms are general and forcefully expressed. See Comment Note — Rule as Regards Competency of Husband or Wife to Testify as to Nonaccess, Annot., 49 A.L.R.3d 212, 219-220 (1973). Since the time of the *Sayles* opinion (1948), this court has indicated a greater willingness to abrogate judgemade rules of law which lack continuing soundness. Indeed, this court's Advisory Committee to Study the Rules of Evidence has recommended through proposed rule 601 that we abrogate "the common law incompetency of spouses to testify to illegitimize a child," citing *Taylor* v. *Whittier,* 240 Mass. 514 (1922), and K.B. Hughes, Evidence § 123 (1961). The rule is said to have been based on reasons of decency and policy, especially because of the benefit it accords to the child who was not at fault. *Sayles* v. *Sayles, supra* at 67, citing *Taylor* v. *Whittier, supra* at 516. However, because evidence of blood test results does not fall within the rule's scope, we need not decide at this time whether we will abandon the Lord Mansfield rule either by judicial decision or by court rule.

[5] The rule has been adopted in approximately twenty States and rejected in approximately eight. See Comment Note — Rule as Regards Com-

abandoned in others.[6]  In any event, it has no application to an attempt to introduce evidence of nonaccess through witnesses other than the spouses. *Sayles* v. *Sayles, supra* at 69. Thus, in many instances, evidence is admissible to prove facts which may demonstrate that a husband is not the father of a child born to his wife during their marriage. A blood grouping test, although it does involve the spouses' participation (but in a nontestimonial way), appears to fall outside the restrictions of the Lord Mansfield rule.

The Legislature has authorized a husband and a wife to testify in a nonsupport action concerning the parentage of a child (G. L. c. 273, § 7) and has allowed a mother, although married, to testify in an illegitimacy proceeding that a man other than her husband is the father of her child (G. L. c. 273, § 16). See *Commonwealth* v. *Rosenblatt,* 219 Mass. 197 (1914). If, as a matter of policy, such testimony from a husband or wife, casting doubt on the legitimacy of a child born during their marriage, is admissible in statutory nonsupport proceedings, we have no doubt that at least results of conclusive blood grouping tests should be admissible in determining whether a husband should have child support obligations expressed in a divorce judgment. A married man should have no duty to support a child born to his wife during their marriage but fathered by another man, any more than a wife should have a duty to support a child fathered by her husband during their marriage but born of another woman. Similarly, assuming that a husband is entitled to maintain an annulment action at all on evidence such as was presented in this case (a point we next discuss),

---

petency of Husband or Wife to Testify as to Nonaccess, Annot., 49 A.L.R.3d 212, 220 n.9 (1973).

[6] Two intermediate appellate courts, following indications from the highest courts of their States, have held that the rule declaring the incompetency of a husband or wife to testify to nonaccess of his or her spouse should no longer be followed. See *Williams* v. *Estate of Long,* 338 So. 2d 563, 566 (Dist. Ct. App. Fla. 1976); *Commonwealth ex rel. Savruk* v. *Derby,* 235 Pa. Super. Ct. 560, 565-566 (1975).

The Lord Mansfield rule has been abrogated under English law. See Matrimonial Causes Act, 1950, 14 Geo. 6, c. 25, § 32.

blood grouping test results should also be admissible in determining whether a wife misrepresented to her husband, before their marriage, that he was the father of her unborn child.[7]

It appears clear from the record that Clifton admitted that he had sexual intercourse with Joyce on numerous occasions during the period in which the child was conceived. According to our decisions, a man who has had sexual relations with a woman before marriage to her may not obtain an annulment of the marriage on the ground that he was fraudulently induced to marry the woman (a) who asserted that he was the father of her unborn child (*Arno* v. *Arno,* 265 Mass. 282, 284 [1928]), or (b) who asserted at the time of their marriage that she was not pregnant, when in fact she was pregnant by another man (*Crehore* v. *Crehore,* 97 Mass. 330 [1867]). The *Arno* opinion noted that our rule had been criticized by some and rejected by others, but the court decided to adhere to what it called "a hard but salutary rule." *Arno* v. *Arno, supra.* In 1941, this court regarded the rule as settled that a husband could not obtain an annulment of a marriage if he had "criminal intercourse" with his wife before marriage. *Levy* v. *Levy,* 309 Mass. 230, 233 (1941). The judge below did not rely on this rule in dismissing Clifton's complaint for annulment. He found that there was "no fraud or misrepresentation that induced the husband to enter into the marriage." We think the judge was correct in not relying on the rule accepted in the *Crehore* and *Arno* opinions. We would no longer follow that rule. Its harshness is apparent, and today we see no salutary quality in such a rule.

We simply hold that the judge's decision to deny the taking of blood tests cannot be upheld on the grounds on which

---

[7] Any determination that the husband is not the father of a child born to his wife during marriage is, of course, not binding on the child who is not a party to the proceeding. See *Sayles* v. *Sayles,* 323 Mass. 66, 69 (1948). This fact may be of little practical significance, however, if the paternity of the husband is conclusively excluded by the results of competent, unchallenged blood grouping tests.

he relied. The matter of ordering blood tests is one of discretion which must, however, be exercised with recognition of the high level of accuracy now attainable by such tests. See *Commonwealth* v. *Blazo*, 10 Mass. App. Ct. 324, 327 (1980); *Little* v. *Streater*, 452 U.S. 1, 8 (1981). Of course, once any test results are available, the question of their admissibility remains. Results of unchallenged competent tests showing that Clifton is not the father of the child would not only be admissible (see *Commonwealth* v. *Stappen*, 336 Mass. 174, 176-177 [1957]), but would be conclusive (see *Commonwealth* v. *D'Avella*, 339 Mass. 642, 644-645 [1959]). We leave to another day the question of the admissibility of test results having a different degree of certainty.

The judgment dismissing the husband's complaint for divorce is affirmed. The judgment dismissing the husband's complaint for annulment is vacated. That portion only of the judgment ordering child support payments on the wife's complaint for divorce is vacated. The two proceedings in which the judgments have been vacated, in whole or in part, are remanded to the trial court for further proceedings.

*So ordered.*