Larkin, J.
This matter comes to us following the allowance of an Interlocutory Report challenging the granting by the trial judge of petitioner’s motion to order a Human Leukocyte Antigen (hereinafter H.L.A.) Test and permitting the admissibility of the results of this test.
The case out of which this issue arises involves a proceeding under M.G.L. . C.273A, the Uniform Reciprocal Enforcement of Support Act, (hereinafter URESA). The petitioner is seeking support for her child, Maria .Elizabeth Stosiek, born August 18, 1984. On March 19, 1985, the respondent filed a motion seeking blood grouping and H.L.A. tests to determine whether the respondent could be excluded as the father of the child. The motion was allowed.
On October 17,1985, the petitioner sought a continuance to await a decision in the then pending Supreme Judicial Court decision in the case of Commonwealth v. Beausoleil [ultimately decided on April 3, 1986 and reported at 397 Mass. 206 (1986) ]. The motion for continuance was denied. On the same day, the petitioner moved to admit the results of the H.L.A. test. No action was taken on that motion. The trial began on October 22,1985. The trial was not completed that day and the case was thereafter heard on various dates until February 7, 1986 when the respondent rested. The petitioner had initially rested on November 15, 1985.
The record shows that the petitioner repeatedly sought, during the course of *174 the trial, introduction of the H.L.A. test results. The respondent consistently objected on three separate grounds: first, the putative inadmissibility under M.G.L. c.273, sec. 12A; second, that the test documents sought to be offered were hearsay and finally, lack of “foundation” stemming from an absence of testimony “authenticating” the test result.
Prior to closing arguments, the Court, on its own motion, stated that it would reopen the evidence upon the petitioner’s motion for anew blood test if the petitioner was willing to bear the cost of such test. The petitioner filed such a motion on July 17,1986. The Court allowed the petitioner’s motion over the objections of the respondent. The respondent then brought a motion to report certain questions of law to the Appellate Division of the District Court as an interlocutory appeal. The respondent’s motion was allowed and the present appeal followed.
In allowing the Interlocutory Report, the trial judge reported the issues in the following form:
1.) Is former General Laws, Chapter 273, Section 12 A applicable to an HLA test sought to be admitted in URESA proceedings?
2.) Is former General Laws, Chapter 273, Section 12A applicable to an HLA test in a URESA proceeding commenced prior to its repeal pursuant to Acts of 1986, Chapter 310, Section 25 but in situations where the evidence is sought to be admitted after repeal?
3.) If former General Laws, Chapter 273, Section 12A is not applicable, is the result of an HLA test admissible under the principles in Commonwealth v. Beausoleil, 397 Mass. 206 (1986) where said proceeding was commenced prior to said decision?
4.) If former General Laws, Chapter 273, Section 12A is not applicable, is the result of an HLA'test admissible in this case either pursuant to general evidentiary rules or pursuant to Acts of 1986, Chapter 310, Section 17? We will address these issues seriatim.
It is the essence of respondent’s position that M.G.L. c.273, sec. 12A was applicable to URESA proceedings up to the day M.G.L. c. 273, sec. 12A was repealed and replaced by Chapter 310, sec. 25 of the Acts of 1986 (M.G.L. C.209C sec. 17). In general, this contention is supported by the legislative history of c. 273, sec. 12A, hereinafter referred to as the “blood test” statute. The “blood test” statute was first enacted by Chapter 232 of the Acts of 1954. The original version of M.G.L. c.273, sec. 12A referred to the alleged father of the “defendant.” This form of reference to the putative father in the statute was appropriate because, at the time of its enactment, M.G.L. c.273, sec. 12A was used in desertion and nonsupport proceedings, which were then purely criminal in Massachusetts. See, M.G.L. c.273, sec. 1; M.G.L. C.209C, sec. 7.
Experience demonstrated that the use of the term “defendant” presented construction interpretation problems for the courts when some support proceedings were gradually stripped of their “pure criminal” status and were recognized as possessing civil aspects as well. As support proceedings, such as those brought pursuant to M.G.L. c.273, sec. 12, became defined as “quasi-criminal” by the courts, M. v. W, 352 Mass. 704,710, 227N.E.2d469 (1967), the legislature reacted to address this status and situational change.
In 1977, the legislature amended M.G.L. c.273, sec. 12A, replacing the term “defendant” with the term “alleged father.” See Chapter 848, Sec. 5 of the Acts of 1977. This Amendment removed any obstacle there might have been to *175 applying the“blood test” statute to any case but a criminal case.[1] The obvious legislative intent was to expand the applicability of the “blood test” statute to include non-criminal cases as well.
In addition to the legislative intent that the “blood test” statute apply to non criminal cases, the “blood test” statute was deemed applicable to URESA proceedings and had received support in the decided cases. In the case of Doe v. Roe, 19 Mass. App. 270, 473 N.E.2d 719 (1985), the Appeals Court stated, “The purpose of the statutory plan set forth in M.G.L. c.273, sec. 12-18, is to obtain support for the children of unwed parents.”
There exists only one specific reference in the decisional law of Massachusetts addressing the applicability of the “blood test” statute to URESA proceedings. The Supreme Judicial Court, in M. v. W. 352 Mass. 704, 227 N.E.2d 469 (1967) indicated that the “blood test’’statute did not apply to URESA proceedings in the following footnote.
9For example c. 273, sec. 12A, inserted by St. 1954, c. 232, provides (emphasis supplied) for blood grouping tests ‘(i)n any proceeding to determine ... paternity.’On the literal meaning of its words, sec. 12A is applicable in c. 273A proceedings. In any event, such a test would be admissible in evidence in accordance with principles stated in Commonwealth v. Stappen, 336 Mass. 174, 175-177, and Commonwealth v. D’Avella, 339 Mass. 642, 644-647.
The legislative intent of the “blood test” statute, together with the specific reference of applicability as set forth above, seemingly made it clear that the statute applied to URESA cases brought up to July 22,1986, when the statute was repealed and replaced by Chapter 310, sec. 17 (M.G.L. C.209C, sec. 17).
However, all of this was prior to the Beausoleil decision and we thus turn to the second issue: whether the decision in Commonwealth v. Beausoleil precludes admissibility of an H.L.A. test result in this case?
Specifically, we address the question of whether the decision of Beausoleil prevents the admissibility of an H.L.A. test result in a case commenced before April 3,1986, the date of its effect. In Beausoleil the Supreme Judicial Court squarely faced the question of the applicability of M.G.L. c.273, sec. 12A, to H.L.A. type paternity tests.
In that case, the Supreme Judicial Court held that M.G.L. c.273, sec. 12A, does not control the admissibility of H.L.A. type paternity test results: Central to its rationale, the Court stressed the fact that M.G.L. c.2 73, sec. 12A speaks of “blood grouping” tests and that H.L.A. tests are not blood grouping tests, they are tissue typing tests. The Court further reasoned that M.G.L. c.273, sec. 12 A is silent as to the admissibility of tissue typing tests. Therefore, M.G.L. c.273, sec. 12A cannot control the admissibility of the results of H.L.A. tests. Id.
In Beausoleil, however, the Court taking note of the prior Massachusetts legal, environment recounted above, stated that statutes and case law in existence prior to Beausoleil gave the impression that H.L.A. test results would be controlled by M.G.L. c.273, sec. 12A and would be inadmissible if inculpatory. The Court obviously sensitive to the impact of reversing the traditional rule of exclusion, with its predictable expectations, established detailed standards for the admission of H.L.A. and H.L.A. and isoantigen combination test results. Most importantly, for present purposes, the. Court placed specific limits on the applicability of the Beausoleil decision in terms of its prospective application.
*176 In unequivocal language the Court stated:
The statutory and case law in this Commonwealth prior to today appeared to prohibit the introduction of inculpatory blood test results and we think any chance in that regard ought to apply prosnectivelv only to defendants’ charged after the date of this opinion. 397 Mass. 206 at 223 (fn.22) (emphasis supplied)
In another part of its decision the Court stated:
Considerations of fairness dictate that the results of the blood tests sought to be introduced to prove the defendant’s paternity be excluded x x x We think the defendant’s reliance on M.G.L. c.273, sec. 12A, reasonable and we decline to apply today’s decision retroactively to this defendant. 397 Mass. 206 at 222.
However much we might like to find some flexibility in this language, especially in light of the evidentiary posture of this case (see infra), we believe that the Supreme Judicial Court has spoken clearly and unequivocally on this issue. The net result of the Court’s decision is that the changes wrought by Beausoleil are to apply prospectively to individuals charged after the date of the-opinion and are not to be applied retroactively.
Here the Massachusetts proceedings were, in effect, commenced on March 19,1985 when the respondent filed her Motion for Blood Grouping Tests and specified an H.L.A. test “to determine whether or not the Respondent can be excluded as being the father of the child.” The record shows that the trial of the instant case began October 22,1985. The Beausoleil case was decided on April 3,1986 with the emphatic caveat that it was to be applied prospectively “only to defendants charged after the date of this opinion.”
The record is clear that the trial of the instant case began October 22,1985 while the Beausoleil case was decided on April 3, 1986. It thus seems axiomatic that the Respondent was indeed “charged” prior to the date of the Beausoleil opinion. And it seems equally axiomatic that, given the relevant time frame, the results of any blood or H.L.A. tests ordered by the trial judge are not admissible.
Under the circumstances, we reluctantly conclude that the trial judge was in error in moving to admit the H.L.A. tests.
Moreover, in the light of the clear and unequivocal language of the Court in Beausoleil we do not believe that the results of an H.L.A. Test are admissible where, as here, the proceeding was clearly commenced — the respondent “charged” — prior to the date of the decision but where the trial judge, in an obvious and laudable search for truth, sought to “reopen” the trial in order to admit the results of the test following the Beausoleil decision.
Our “reluctant” (but necessary) finding of error here stems from the fact that all modern rules of evidence favor “admissibility” and approach considerations of “relevance” with capacious amplitude. Accordingly, were it not for the conspicuously circumscribing language of Beausoleil we would clearly resolve the question of whether the test results should be admitted pursuant to general evidentiary rules (or pursuant to Acts of 1986, Chapter 310, Section 17) in favor of the petitioner.
Such a result would surely be reinforced by the evidentiary state of the record so cogently canvassed by the able trial judge. (See especially pg. 3 of the trial judge’s “Memorandum of Decision on Plaintiffs Motion to Admit Results of Human Leukocyte Antigen Test Results.”) The perplexing and nuanced evidentiary posture of this case would have made the results of the H.L.A. test very desirable and, undoubtedly, highly helpful to a fact finder seeking *177 guidance in this highly charged area of the law. Finally, consonant with considerations of fairness, it cannot be gainsaid that the Commonwealth’s interest in making fathers responsible for the children they sire is clearly compelling. Through its parens patriae power, Massachusetts is responsible for ensuring that children will receive the support, that fathers will indeed be held accountable for the children they sire, and finally, that these children will not become a burden on the social welfare resources of the Commonwealth.
For all of these reasons, tests which have a high degree of reliability in making the fateful determinations in this area should not be placed beyond the call of the fact finder absent language of uncommon and unmistakable directness. However, for the purposes of the present interlocutory matter, we find such language present and thus return the case to the trial court with instructions to exclude the results of the H.LA. test. It is so ordered.

 This change is apparently the only amendment ever made to M.G.L. c.273, sec. 12A.