COMMONWEALTH *vs.* CHESTER ADDERLEY. No. 93-P-557. February 22, 1994. *Constitutional Law*, Right to obtain testimony, Witness. *Practice, Criminal*, Attendance of witnesses, Instructions to jury. *Evidence*, Relevancy and materiality, Exculpatory. *Identification*.

The defendant was convicted of various offenses arising out of an incident in which someone shot at, but missed, two security guards, Max Agbasi and Emerald Brown, at approximately 8:00 P.M. on June 4, 1991, from a distance of about 205 feet across Washington Street at Northampton Street in Boston. Because of a combination of errors, we reverse.

According to the Commonwealth's evidence, the shooter was wearing a blue and white jacket. Two or three minutes before the shooting, Agbasi and Brown had an altercation with several young men, including one identified at trial by Agbasi and Brown as the defendant, who had driven in the direction of Northampton Street in a Subaru automobile. Approximately ten to twenty minutes after the shooting, the defendant, in the company of another young man, was seen walking on Northampton Street, heading toward Tremont Street, carrying a blue and white jacket. According to a third security guard from the agency that employed Agbasi and Brown, upon seeing him the defendant ran toward a brown Cadillac automobile, and allegedly tossed a jacket into the Cadillac. The Cadillac then

left. The police arrived on the scene, Agbasi identified the defendant, and he was arrested. No gun was found.

The issue at trial was the identity of the shooter. Both Agbasi and Brown testified that they recognized the defendant as the shooter. The defendant put forth an alibi defense, presenting his own testimony and that of several witnesses, including Curtis Jenkins, with whom the defendant had been walking on Northampton Street, and the couple who were in the brown Cadillac. According to the defendant and Jenkins, they had been together for several hours before the defendant was arrested, and they had been involved neither in the altercation with Abgasi and Brown nor the shooting. According to their testimony, they went to a liquor store on Massachusetts Avenue and Tremont Street to purchase liquor; they sat and talked for an hour and a half on steps nearby; they then went to a variety store on Tremont Street where the defendant talked to Anthony Chase, an employee of the store, for a period between five and twenty minutes; and from the store they went to catch a bus. While waiting for the bus, the defendant saw friends in a brown Cadillac on Tremont Street. He talked to his friends for two or three minutes, and then he was arrested.

The defendant's principal contention on appeal is that the judge erred in failing to issue a bench warrant for Chase's appearance at trial. Although the right of an accused under the Sixth Amendment to the Federal Constitution to present witnesses in his own behalf and, if necessary, to compel their presence, see Mass.R.Crim.P. 17(e), 378 Mass. 887 (1979), is not absolute, *Commonwealth* v. *Blaikie*, 375 Mass. 601, 608 (1978), those rights are of fundamental importance. *Washington* v. *Texas*, 388 U.S. 14, 23 (1967). See *United States* v. *Goodwin*, 625 F.2d 693, 704 (5th Cir. 1980); *United States* v. *North*, 910 F.2d 843, 889 (D.C. Cir. 1990), cert. denied, 500 U.S. 941 (1991). The test whether to order a bench warrant for a missing witness is based upon the witness's necessity for an adequate defense. See *Commonwealth* v. *Funderberg*, 374 Mass. 577, 580 (1978); *Commonwealth* v. *Drew*, 397 Mass. 65, 69 (1986). That determination, however, ordinarily rests ·in the trial judge's sound discretion. See *Commonwealth* v. *Blazo*, 10 Mass. App. Ct. 324, 328 (1980). That the witness's testimony would merely be corroborative of other evidence in the case would ordinarily be a reasonable basis for refusal. *Ibid.*

In his opening statement, defense counsel informed the jury that Chase would testify about the conversation he had with the defendant, what he remembered the defendant doing that night, and why he remembered. On the third day of trial, while putting on the defense case, counsel informed the judge that, although Chase was under subpoena, he was not in court, and counsel requested that a bench warrant be issued to bring Chase into court. Counsel told the judge that, if present, Chase would testify that on the evening of the incident he had a conversation with the defendant at the variety store where he worked and that he would describe what the defendant was wearing. The judge denied the request for a bench warrant, stat-

ing that the proposed testimony would be merely corroborative of other evidence in the case. However, he refused to allow defense counsel to make a formal offer of proof, and he expressed his concern about delaying completion of the trial in a tone of impatience and unjustified dissatisfaction with defense counsel.[1]

In view of the rejection of the offer of proof, we assume Chase's testimony would have supported the defendant's alibi, that Chase would have been able to recall what time his conversation with the defendant took place, and that his testimony about what the defendant was wearing would have been helpful to the defense. Compare *Mullins* v. *Peaslee*, 180 Mass. 161, 162 (1901). Moreover, unlike Jenkins, who was a close friend of the defendant (and who had been impeached as a result of his failure to provide exculpatory information to the authorities), it seems that Chase would have appeared to the jury to be a neutral witness. Given the relevance of the proposed testimony, the lack of any indication that ascertaining Chase's whereabouts would have required a substantial delay, and the fact that the judge declined the opportunity to obtain all the information necessary to exercise his reasoned discretion, we conclude that there was a substantial risk that the defendant was deprived of his right to present an adequate defense. See *Johnson* v. *Johnson*, 375 F. Supp. 872, 876 (W.D. Mich. 1974); *United States* v. *Simpson*, 992 F.2d 1224, 1230 (D.C. Cir.), cert. denied, 114 S. Ct. 286 (1993). Contrast *Commonwealth* v. *Blazo*, 10 Mass. App. Ct. at 328; *Ross* v. *Estelle*, 694 F.2d 1008, 1010-1011 (5th Cir. 1983); *United States* v. *Fountain*, 768 F.2d 790, 797 (7th Cir. 1985), cert. denied, 475 U.S. 1124 (1986). We need not decide whether the failure to issue a bench warrant for Chase, by itself, would have warranted a new trial because there were other shortcomings of the trial which, considered in combination with that failure, as well as with the fact that the

---

[1]THE COURT: "This case has gone on twice as long as it should have already, counsellor."

DEFENSE COUNSEL: "I apologize, Your Honor. I feel like I have an innocent client and I'm trying to do the best I can under the circumstances."

THE COURT: "Do you have any further witnesses that are present?"

DEFENSE COUNSEL: "Your Honor, if I were forced to put on another witness at this point, I would put on my client."

THE COURT: "I'm not forcing you to put your client on."

DEFENSE COUNSEL: "That I understand. But if I'm required to put on another witness, I would be forced to go out of order and that is put on my client now."

THE COURT: "What kind of jazz are you giving me, out of order?"

DEFENSE COUNSEL: "I'm just telling you — all I'm just saying, Your Honor, is that —"

THE COURT: "What do you think the courts are, a play pen for the public defenders?"

DEFENSE COUNSEL: "Your Honor, this is a serious case for my client."

THE COURT: "Look, if you've got any more witnesses, I don't care whether they're the defendant or not, put them on."

evidence in the case was not overwhelming, entitle the defendant to a new trial. See *Commonwealth* v. *Clary*, 388 Mass. 583, 591, 594 (1983).

*Other issues.*

1. The judge should have allowed Jenkins to explain his failure to report exculpatory information to the police. See *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130-131 (1977); *Commonwealth* v. *Errington*, 390 Mass. 875, 880 (1984).

2. The judge refused a proper defense request in specific terms to instruct the jury on the possibility of a good faith mistake on the part of the witnesses in identifying the defendant in accordance with *Commonwealth* v. *Pressley*, 390 Mass. 617 (1983).

3. Also, in the course of his instructions on identification, patterned on *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979), the judge used language, inadvertently, that tended to equate the defendant with the offender. He said, "Whether the witness had an adequate opportunity to observe the offender, *which means the defendant*, at the time of the offense . . . ." Defense counsel objected. No immediate correction was made, but after some deliberations, the judge instructed again on identification and did not make the same error. In his reinstruction, however, he used other language which has been criticized. See *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106, 111 (1984); *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640 (1993). He stated: "You may consider the length of time that elapsed between the occurrence of the crime and the *next* opportunity the witness had to see the defendant . . . ." (There was no objection to the reinstruction.)

Accordingly, the judgments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for retrial.

*So ordered.*

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Susanne G. Levsen*, Special Assistant District Attorney, for the Commonwealth.