COMMONWEALTH vs. PAUL J. DEGRENIER.

No. 93-P-1812.

Worcester. September 13, 1995. - March 25, 1996.

Present: DREBEN, LAURENCE, & LENK, JJ.

Constitutional Law, Right to obtain testimony, Witness. Practice, Criminal,
    Attendance of witnesses, Judicial discretion, Argument by prosecutor.
    Controlled Substances. Witness, Corroboration.

A District Court judge erred in denying a criminal defendant's motion to
    produce a witness who was incarcerated in another county, where the
    witness's expected testimony was relevant and material to the defense;
    the error was not harmless where the main issue at trial was credibility
    and the case against the defendant was not overwhelming. [214-216]

COMPLAINT received and sworn to in the Dudley Division
of the District Court Department on May 28, 1993.

On transfer to the jury session of the Worcester Division, a
motion to deliver a witness was heard by Sarkis Teshoian, J.,
and the case was tried before Austin T. Philbin, J.

Pavel H. Wonsowicz for the defendant.

Christopher P. Hodgens, Assistant District Attorney, for
the Commonwealth.

LENK, J. The defendant was convicted by a District Court
jury of possession of marihuana, in violation of G. L. c. 94C,
§ 34, and was sentenced to one year of probation. On appeal,
the defendant claims that the motion judge erred in denying
his motion to deliver an inmate witness, and that the trial
judge erred in allowing the prosecutor in his closing argu-
ment to comment on the defendant's failure to produce the
witness. We agree and reverse the defendant's conviction.
Only the first issue requires detailed discussion.

According to the Commonwealth's evidence, two town of
Webster police officers driving an unmarked police cruiser
saw the defendant and one Thomas Lefebvre sitting next to

each other on a wall behind a local bar called "Cheers II" at approximately 1:30 A.M. on May 28, 1993. The officers parked the cruiser with its headlights directed at the defendant and Lefebvre, and approached the two men. Lefebvre held a large plastic cup, and, in response to a question from the officers, said that he was drinking beer. While one police officer returned to the cruiser to run a warrant check, the other officer stood approximately five feet from the men with his flashlight trained on them. He then heard a crinkling sound and saw the defendant reach into his back pocket, remove a plastic bag, and drop it next to him. The bag contained six marihuana cigarettes. The defendant was placed under arrest and frisked. A cigarette lighter and a package of "zig zag" cigarette rolling papers were found in his pockets. Lefebvre was taken into protective custody due to his intoxication.

According to the defendant's testimony, Lefebvre was a friend who, on the night in question, came to visit the defendant at his apartment above Cheers II and asked him to come outside to talk. While sitting on the wall, and before the police cruiser appeared, Lefebvre pulled out the bag of marihuana and asked the defendant if he wanted to smoke. The defendant declined. When the cruiser appeared, Lefebvre said to the defendant, "Hang on to this" (the bag of marihuana cigarettes). The defendant replied, "No. Get rid of it. Throw it in the woods." Lefebvre threw the bag of marihuana behind the defendant. When the cruiser stopped, Lefebvre said to the defendant, "The bag of weed, I threw it behind your back," whereupon the defendant tried to throw it farther into the woods. When the police officer found the bag of marihuana cigarettes, Lefebvre claimed responsibility for the marihuana, saying, "That's not his. It's mine." Lefebvre then snatched the bag from the officer's hand, and ran with it. The defendant testified as well that he was a smoker, and had a cigarette lighter in his pocket, but that he had no cigarette rolling papers on his person.

The defendant subpoenaed Lefebvre to testify at the first trial date of July 9, 1993. When the witness failed to appear, the trial was continued until September 1, 1993, and the defendant issued a second subpoena ordering Lefebvre to appear on the new trial date. On August 26, 1993, defense counsel learned that Lefebvre had been in the East Boylston house of correction (jail) since August 17, 1993. Defense

counsel informed the prosecutor of this fact by first class mail,[1] and at a motion session on September 1, 1993, asked the court to order the witness to be delivered to testify at the defendant's trial. The court directed the prosecutor to contact the jail to make arrangements to deliver the witness.[2] Defense counsel stated that Lefebvre was a necessary witness because he was present at the scene of the offense, and was taken into custody along with the defendant. Counsel further stated that his theory of the case was that Lefebvre, who had a prior record, placed the bag of marihuana behind the defendant, who had never been charged with possession of any controlled substance before. The prosecutor then reported that he had contacted the jail, whereupon it was learned for the first time that Lefebvre had been transferred from East Boylston to western Massachusetts on August 26, 1993. The jail reported that it would be impossible to have Lefebvre delivered to the court on such short notice. The court then denied defense counsel's motion to produce the witness, stating, "Having made the effort to have him here and delivered from the jail, I'm going to deny your Motion."

1. *Right to present witnesses.* The defendant contends on appeal that the motion judge abused his discretion by denying his motion to order Lefebvre to appear as a witness, and in so doing, violated the defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights, to present witnesses on his own behalf and to compel their presence. These rights are not absolute, *Commonwealth* v. *Blaikie*, 375 Mass. 601, 608 (1978), but are of fundamental importance. See *Washington* v. *Texas*, 388 U.S. 14, 19 (1967). *Commonwealth* v. *Brookins*, 33 Mass. App. Ct. 626, 633 (1992), *S.C.*, 416 Mass. 97 (1993).

---

[1]While defense counsel's "Motion to Deliver Witness" does not appear on the docket, and the motion judge stated on the record that he found no such motion in the record, the Commonwealth acknowledged at oral argument that defense counsel had sent notice to the prosecutor by first class mail upon learning that Lefebvre was incarcerated.

[2]Although the hearing transcript does not contain the court's initial directive to bring in the witness, the directive was acknowledged by the Commonwealth in its brief and at oral argument. Further, the transcript does contain a later inquiry by the court as to whether the jail had been contacted, thus implying that the court had given an earlier directive to bring in the witness. The transcript had numerous gaps marked "(inaudible)."

A decision whether or not to order a witness to appear requires discretion on the part of the trial judge, and thus will be reversed only for an abuse of discretion or an error of law. *Commonwealth* v. *Drew*, 397 Mass. 65, 70 (1986). See *Commonwealth* v. *Blazo*, 10 Mass. App. Ct. 324, 328 (1980); *Commonwealth* v. *Adderley*, 36 Mass. App. Ct. 918, 919 (1994). In reviewing the denial of the defendant's motion to order Lefebvre to appear, we must determine whether Lefebvre was a witness necessary to an adequate defense. *Drew, supra* at 69-70. *Adderley, supra* at 919. A "necessary" witness is one whose testimony is relevant, material, and not cumulative. *Commonwealth* v. *Blaikie*, 375 Mass. at 610. See *United States* v. *Simpson*, 992 F.2d 1224, 1230 (D.C. Cir.), cert. denied, 510 U.S. 906 (1993), cited by *Adderley, supra* at 920. Lefebvre's proffered testimony fits all those criteria. The defendant was convicted of possession of marihuana. Such a conviction requires the jury to find that the defendant's possession was intentional and voluntary, rather than because of ignorance, mistake, or accident. *Commonwealth* v. *Owens*, 414 Mass. 595, 606-607 n.4 (1993). The defendant's theory of the case went directly to the element of voluntariness. If his friend Lefebvre had corroborated the defendant's testimony regarding the ownership and control of the marihuana, the defendant might well have been acquitted on the basis that his possession of the marihuana, if he did indeed possess it, was by mere accident or mistake. Lefebvre's testimony was relevant and material to the defense. As Lefebvre would have been the only witness for the defense other than the defendant himself, it can hardly be said that his testimony would have been cumulative. Contrast *Blazo*, 10 Mass. App. Ct. at 328. Nor did defense counsel fail to make attempts to produce the witness before the September 1, 1993, trial date. Contrast *Commonwealth* v. *Chase*, 14 Mass. App. Ct. 1032, 1034 (1982); *Commonwealth* v. *Scott*, 19 Mass. App. Ct. 983, 985 (1985). It was, thus, error to deny the defendant's motion to produce the witness.[3]

As there was error, and a constitutional right is implicated,

---

[3]We are unaware of any requirement upon the defendant in such circumstances to make a showing by way of affidavit that Lefebvre would likely testify as the defendant hoped. Defense counsel had already informed the judge of the substance of Lefebvre's expected testimony. The District Court judge gave no indication that an affidavit from Lefebvre was wanted. See Mass.R.Crim.P. 17(e), 378 Mass. 887 (1979). But see Smith, Criminal

the conviction cannot stand unless the Commonwealth can show that the error was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24 (1967). *Commonwealth* v. *Perez,* 411 Mass. 249, 260 (1991) ("proper inquiry [is] 'whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction' " [citation omitted]). We find that the Commonwealth has not met this burden. The case essentially presented an issue of credibility. The jury could believe either the defendant's or the police officers' version of events. As the defendant's testimony was self-serving, his credibility was greatly impaired. In contrast, if Lefebvre had corroborated his friend's testimony, he would have had greater credibility, as he would have thereby incriminated himself. The harm suffered by the defendant as a result of excluding Lefebvre from the trial was exacerbated by the prosecutor's closing argument (excerpted in the margin),[4] which could have been understood to imply that the defendant had deliberately excluded Lefebvre from testifying, thus further detracting from the defendant's credibility. Lastly, the case against the defendant was not overwhelming. The marihuana was not found on his person, but merely near him. How it came to be there was the issue. Lefebvre's testimony could have been sufficient to create a reasonable doubt that the defendant was in possession of the marihuana.

2. *Closing argument.* As we find that the denial of the defendant's motion to produce a key witness in his defense was not harmless error, we need not reach the question whether, standing alone, the prosecution's comments on the missing witness created a substantial risk of a miscarriage of justice. We have already noted how such comments contrib-

---

Practice & Procedure § 1125 (1983). We note that the defendant did not request a trial continuance, and it is unclear whether a continuance (in contrast to perhaps an early adjournment one day and resumption of trial the next) would indeed have been necessary in order to receive Lefebvre's testimony. We thus need not address the application here of the affidavit requirement of Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979).

[4]"[Lefebvre] runs up, says, 'It's not his, it's mine,' . . . . The same individual who Mr. Degrenier told you has never been here on this case . . . . It's easy to blame Mr. Lefebvre. Mr. Lefebvre is not here. Mr. Lefebvre did it."

uted to the harm done the defendant by the failure to compel the witness's attendance.

The judgment is reversed, and the verdict is set aside.

*So ordered.*