Teresa CHANDLER (SPEED) *v.* James BAKER

CA 85-239                                        700 S.W.2d 378

Court of Appeals of Arkansas
Division II
Opinion delivered December 11, 1985

*East Arkansas Legal Services, Inc.*, by: *James O'Connor*, for appellant.

*Henry J. Swift*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the circuit court, sitting without a jury, which held that appellee, James Baker, was not the father of appellant's children, Stanley and Ebony. We affirm.

Without detailing the evidence introduced, we think it sufficient to say that appellant testified that appellee was the father of the children; that there was some evidence to corroborate that possibility; and that appellee admitted a sexual relationship with appellant but testified that this relationship had ended more than a year before her first child was born.

Pursuant to an order of the court, appellant, appellee, and the two children were given blood tests to determine the likelihood of appellee's being the father. Through arrangements made by the Child Support Enforcement Unit, blood samples were drawn in Blytheville, Arkansas, and sent to the National Paternity

Laboratories, Inc., in Dayton, Ohio, for testing. The lab report stated that the test results indicated that appellee could not be excluded as a possible father of the children, and it was calculated that the likelihood he was Stanley's father was 190 to 1, and for Ebony the likelihood was 101 to 1.

When this lab report was offered into evidence by appellant, the appellee objected unless the expert making the blood test was present for cross-examination. Appellant declined the option to seek a continuance so that the witness could be present and the court reserved ruling on the report's admissibility until briefs were filed after trial. After considering the briefs, the court ruled the report inadmissible and found for the appellee on the basis that appellant had failed to meet her burden of proof. The appellant argues that under Ark. Stat. Ann. § 34-705.1 (Supp. 1985), the report was admissible. That statute, which is the first section of Act 127 of 1955, as amended in 1981 and 1983, provides as follows:

> Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court may direct that the defendant, complainant and child submit to one (1) or more blood tests or other scientific examinations or tests, to determine whether or not the defendant can be excluded as being the father of the child, and to establish the probability of paternity if the test does not exclude the father [defendant]. The results of the tests shall be receivable in evidence. The tests shall be made by a duly qualified physician, or physicians, or by another duly qualified person, or persons, not to exceed three (3), to be appointed by the court. The costs of the test shall be taxed as other costs in the case or, in the court's discretion, may be taxed against the county. Such experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings.

■ We do not agree with appellant's argument that this statute makes the results of the tests admissible and that it simply *permits* the persons who performed the tests to be cross-examined after the court has caused them to disclose their findings. To the contrary, the statute clearly states that these experts *shall be subject* to cross-examination. Thus, we think the trial court was

correct in ruling that the lab report was not admissible since the persons who performed the blood tests at the laboratory in Dayton, Ohio, were not available for cross-examination.

We also note that this statute may not even apply *in this case* since the appellant's abstract does not indicate that the persons (or person) who made the tests were *appointed by the court.* Furthermore, we are not unmindful of the fact that the second section of the 1955 Act was amended by the 1985 General Assembly to provide that a written report of the test results by a duly qualified expert performing the tests, certified by an affidavit duly subscribed and sworn to by him before a notary public, may be introduced in illegitimacy actions without calling such expert as a witness; and if either party desires to question the expert, the party shall have him subpoenaed within a reasonable time prior to trial. *See* Ark. Stat. Ann. § 34-705.2 (Supp. 1985). However, at the time this present case was tried, that section applied only to the State Medical Examiner, *see* Ark. Stat. Ann. § 34-705.2 (Repl. 1962).

■ Appellant also contends the report of the test results should have been admitted because Unif. R. Evid. 803(24) provides that a statement having sufficient circumstantial guarantees of trustworthiness is admissible, even if hearsay, if the statement meets the criteria set out in the rule. There are at least two answers to this argument. In the first place, the criteria set out obviously grants the trial court broad discretion in determining whether such a statement should be admitted, and we cannot say that discretion was imprudently exercised in this case. Also, as we have already said, Ark. Stat. Ann. § 34-705.1, *supra*, expressly states that after the tests have been received into evidence, the persons performing them *shall be subject* to cross-examination, and *Winston* v. *Robinson*, 270 Ark. 996, 606 S.W.2d 757 (1980), held that the Uniform Rules of Evidence did not repeal the provisions of Ark. Stat. Ann. § 34-705.1. So, we cannot agree that the Uniform Rules of Evidence required the court to admit the lab report into evidence.

■■ Appellant's next argument is that the trial court erred by placing an incorrect burden of proof on her. This suit is a civil proceeding and it was the appellant's burden to prove her case by a preponderance of the evidence. *McFadden* v. *Griffith*,

278 Ark. 460, 647 S.W.2d 432 (1983). A preponderance of the evidence means the greater weight of the evidence—the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. *See* Arkansas Model Jury Instruction 202. Appellant's argument that the trial court applied the wrong burden of proof is based upon the judge's remarks made at the conclusion of the trial of this case. The judge stated:

> [E]ven though the scales were heavily tipped in favor of the plaintiff at the time she rested, which I suppose is always the case in every case. . . . Considering all the facts and circumstances, there leaves a question as to the burden of proof and the Court is of the opinion at this stage that the plaintiff has not met the burden. The lab report test concerning the paternity is, in the mind of the court, essential to this case.

After the briefs were filed on the question of the admissibility of the report on the blood tests, the court held the report inadmissible and found that the appellant had not met her burden of proving appellee the father of her children.

■ We see nothing in the remarks of the court, or in the findings of fact set out in his opinion letter to the attorneys, or in the judgment entered of record to indicate that the court considered the appellant's burden of proof to be anything other than by a preponderance of the evidence. In fact, the judge's remark about tipping the scales is certainly in keeping with the concept of determining the weight of the evidence, which is the very essence of what the preponderance of the evidence means. However, under the provisions of ARCP 52(a), our problem is to determine whether the trial judge's finding of fact was *clearly* against the preponderance of the evidence. After a careful review of the evidence, we cannot find that it was.

Affirmed.

CRACRAFT, C.J., and CORBIN, J., agree.