723 P.2d 971

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner-Appellant,**

v.

**Edward COLEMAN, a/k/a Eddie Coleman, Respondent-Appellee.**

No. 8725.

Court of Appeals of New Mexico.

July 29, 1986.

Richard J. Rubin, Gen. Counsel, Patricia E. Bustamante, Asst. Gen. Counsel, John Petoskey, Sp. Asst. Atty. Gen., Human Services Dept., Santa Fe, for petitioner-appellant.

C. Barry Crutchfield, Templeman & Crutchfield, Lovington, for respondent-appellee.

## OPINION

DONNELLY, Judge.

The Human Services Department (HSD) appeals from a judgment denying relief under its petition for adjudication of paternity. Two issues are raised on appeal: (1) whether the trial court erred in failing to consider evidence of paternity serologic testing; and (2) whether the trial court erred in refusing to admit evidence relating to the results of paternity blood testing. We reverse and remand.

### FACTS

HSD filed a petition seeking a determination of paternity, and alleging that respondent was the natural father and responsible for the support of a minor daughter born to Yolanda Hernandez. The child and her mother are receiving state support for dependent children.

During its case-in-chief, HSD sought to establish that respondent was the father of the child, both through the testimony of the natural mother and the respondent, who was called as an adverse witness. Respondent admitted that he paid some medical expenses and other bills for the child, but denied that he was the child's father. HSD also presented testimony of Dr. Ronnie Garner, a medical doctor and expert in blood testing. At time of trial, Dr. Garner served as the medical director of the blood

bank at Presbyterian Hospital, in Albuquerque, and as the chief of the paternity testing division of the hospital.

HSD called Dr. Garner to testify concerning the results of the paternity testing performed at Presbyterian Hospital. Respondent stipulated to the qualifications of Dr. Garner, and the trial court ruled that the doctor would be recognized as an expert witness. Dr. Garner testified that the blood tests of respondent, the natural mother, and the child were made under his supervision and that based upon the tests, he had prepared a written report to the HSD, Child Support Enforcement Bureau, detailing his conclusions concerning the issue of paternity.

In describing the tests, Dr. Garner testified that the ABO, Rh, MNSs, Kell, Duffy and Kidd red blood cell tests were used and that additionally, the Human Leukocyte Antigen (HLA) test for white blood cells was utilized in testing respondent, the mother and the child. The doctor also testified that the tests were performed in conformity with proper testing procedures.

The trial court initially permitted Dr. Garner to state his opinion that based on the paternity tests performed "the probability that the alleged father, Edward Coleman, is the true father of the child * * * is calculated to be 99.5 percent." Thereafter, counsel for HSD sought to introduce into evidence the written report prepared by Dr. Garner summarizing the result of the serologic testing and which listed the test procedures. Respondent's counsel objected to the tender on the basis of insufficient foundation and lack of relevancy. The trial court sustained the objection. Subsequently, HSD again attempted to elicit additional oral testimony from Dr. Garner concerning the results of the paternity testing and the trial court sustained both general and specific objections to this testimony.

### SEROLOGIC TESTING

HSD asserts that the trial court erred both in failing to admit into evidence Dr. Garner's written opinion testimony as to the paternity testing, and in refusing to consider Dr. Garner's oral testimony relating to the probability of respondent's paternity based upon the tests performed under his supervision.

We first address the threshold issue concerning the admissibility and evidentiary weight of evidence of serologic testing in paternity actions. The use of opinion testimony, based upon blood testing to show that an alleged father may be properly *excluded* as the natural father of a child, has been generally accepted in most jurisdictions. *See* Annot., 46 A.L.R.2d 1000, 1019 (1956). Conversely, recent advancements in the field of serology and genetics have resulted in the development of scientific procedures for blood and tissue testing, providing scientific evidence from which statistical probabilities may be calculated to indicate whether an individual is the father of a certain child. *See* Abbott, *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976).

The most commonly utilized paternity tests are the: ABO, MNSs, Rh, Kell, Duffy, and Kidd (for red blood cells); and the Human Leukocyte Antigen or HLA (for white blood cells or other tissue). Butts & Schwartz, *Serological Testing in Disputed Parentage Cases: Removing the Blindfolds on the Triers of Fact*, 48 Tex.B.J. 754 (1985).

As observed in Annot., 37 A.L.R. 4th 167, 170 (1985):

HLA testing is a recent scientific development which has advanced the role of blood and tissue type testing in paternity cases. When used in conjunction with standard serologic testing, HLA test results can produce a high degree of discrimination either excluding or including a given male as the father of a particular child.

The HLA test for paternity is a scientific procedure which compares genetic antigens identified in the child, the natural mother and the alleged father. The HLA test is based upon the identification and type of antigen markers found in white blood cells

and other tissues of the body. After first identifying the antigen markers of a child and the mother, together with the child's antigen genetic markers which could only have been inherited from the father, the results are then compared with the frequency with which these antigens appear in the random population at large. *See* Sterlek & Jacobson, *Paternity Testing with the Human Leukocyte Antigen System: A Medicolegal Breakthrough*, 20 Santa Clara L.Rev. 511 (1980); Lee, *Current Status of Paternity Testing*, 9 Fam.L.Q. 615 (1975).

In the jurisdictions which have considered the use of HLA blood testing in paternity proceedings, the test, when properly administered, has been generally accepted as reliable and probative in both the scientific community and the courts.[1] *See Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981); *State ex rel. Munoz v. Bravo*, 139 Ariz. 393, 678 P.2d 974 (1984); *Chandler v. Baker*, 16 Ark. App. 253, 700 S.W.2d 378 (1985); *Cramer v. Morrison*, 88 Cal.App.3d 873, 153 Cal. Rptr. 865 (1979); *Carlyon v. Weeks*, 387 So.2d 465 (Fla.App.1980); *Crain v. Crain*, 104 Idaho 666, 662 P.2d 538 (1983); *State ex rel. Hausner v. Blackman*, 233 Kan. 223, 662 P.2d 1183 (1983); *Tice v. Richardson*, 7 Kan.App.2d 509, 644 P.2d 490 (1982); *Haines v. Shanholtz*, 57 Md.App. 92, 468 A.2d 1365 (1984); *Commonwealth v. Blazo*, 10 Mass.App. 324, 406 N.E.2d 1323 (1980); *Imms v. Clarke*, 654 S.W.2d 281 (Mo.App.1983); *Malvasi v. Malvasi*, 167 N.J.Super. 513, 401 A.2d 279 (1979); *Callison v. Callison*, 687 P.2d 106 (Okla.1984); *State ex rel. Pershall v. Woolsey*, 32 Or. App. 257, 573 P.2d 771 (1978); *Miller v. Kriner*, 341 Pa.Super. 293, 491 A.2d 270 (Pa.Super.1985); *Phillips v. Jackson*, 615 P.2d 1228 (Utah 1980); *see also* Abbott, *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage.*

Based upon the above authorities, we conclude that the HLA and red blood cell test procedures, together with the evidence of statistical probabilities drawn therefrom, are admissible as evidence in disputed paternity actions when a proper evidentiary foundation is established. A prerequisite to eliciting scientific or specialized opinion testimony, is a showing that the witness is qualified as an expert by knowledge, skill, training or education, in the area which the opinion is sought to be given and that the witness has sufficient facts upon which to accurately formulate his opinion. *Sewell v. Wilson*, 97 N.M. 523, 641 P.2d 1070 (Ct.App.1982); NMSA 1978, Evid.R. 702 (Repl.Pamp.1983).

For expert testimony deducted from a scientific principle to be admissible, the technique from which the deduction is derived must be sufficiently established to have gained general acceptance in the particular field. *State v. Beachum*, 97 N.M. 682, 643 P.2d 246 (Ct.App.1981). *See Frye v. United States*, 293 Fed. 1013 (D.C.Cir. 1923). While taking into account general scientific acceptance, the admissibility of scientific evidence must focus on proof of reliability. *Phillips v. Jackson*. *See* Romero, *The Admissibility of Scientific Evidence under the New Mexico and Federal Rules of Evidence*, 6 N.M.L.Rev. 187, 202–04 (1975).

In *State v. Lindemuth*, 56 N.M. 257, 243 P.2d 325 (1952), and *State v. Trimble*, 68 N.M. 406, 362 P.2d 788 (1961), the New Mexico Supreme Court adopted the general rule governing the judicial admission of scientific evidence set out in *Frye v. United States*. *Frye* held that for expert testimony based upon a scientific process to be admissible, the scientific technique upon which the expert's opinion is premised, must be shown to have gained general acceptance in its scientific field. *See also State v. Beachum.*

---

**1.** After the trial herein, and during the time the case was pending on appeal, the 1985 Legislature repealed the general statutes relating to actions to compel support and establish parentage of children, NMSA 1978, Sections 40–5–1 through 22, and enacted the Uniform Parentage Act, Sections 40–11–1 through –23 (Repl.Pamp. 1986). Section 40–11–13 expressly authorizes the admission of evidence of statistical probability by an expert in paternity proceedings.

■ In *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), the court held that the requirements for admission of scientific evidence relating to the results of polygraph testing are: (1) evidence of the qualifications of the expert; (2) testimony to establish the reliability of the testing procedure; and (3) the validity of the tests made on the subject. Similarly, we determine that the same foundational requirements are necessary to establish a basis for the admission of scientific evidence and expert opinion testimony based upon serologic testing in paternity proceedings. *Compare Tice v. Richardson; Phillips v. Jackson.*

In the present case, the trial court recognized Dr. Garner as an expert in paternity testing, and he was shown to have supervised the taking of the blood tests in question. Dr. Garner initially was permitted to testify, without objection, stating his opinion as to the statistical probability that respondent was the father of the child herein. On direct examination, Dr. Garner responded:

Q: And as a result of that [paternity] testing, did you derive a report?

A: Yes, we did.

Q: What were the results of that report, sir?

A: The results of the report, which are dated July 16, 1984, is that the alleged father, Edward Coleman, is not excluded as the true father of the child * * * and the probability that * * * Coleman is the true father of the child * * * is calculated to be 99.5 percent.

Dr. Garner also testified that using only the HLA test results, without application of the red blood cell testing, he calculated that there was a "94.9 percent [statistical probability] that [respondent] was the true father of the child."

■ Respondent contends that HSD is precluded from arguing error as to the trial court's exclusion of Dr. Garner's opinion testimony based upon HSD's failure to challenge the trial court's finding of fact that petitioner had failed to prove the issue of the paternity of respondent. HSD submitted requested findings of fact and conclusions of law, which were contrary to those adopted by the trial court. In its brief-in-chief, HSD expressly challenged the trial court's exclusion of Dr. Garner's opinion as to whether respondent was the natural father of the child. By so doing, HSD properly preserved the issues raised herein for appellate review. NMSA 1978, Civ.App.R. 9(m) (Repl.Pamp.1984).

■ HSD complains on appeal that the trial court erred in failing to consider this testimony and in sustaining objections to other similar testimony. When a witness has been qualified as an expert in a particular field, in the absence of a ruling by the trial court which requires the expert to disclose the basis for his opinion as a prerequisite to stating his opinion on matters within his area of expertise, he need not state the reasons for arriving at his opinion. In such case, the cross-examiner has the responsibility of probing the material factors underlying the expert's opinion if those matters are sought to be questioned. *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 703 P.2d 925 (Ct.App.1985).

■ In a paternity action, the party contending that a respondent is the true father of a child, has the burden of establishing this fact by a preponderance of the evidence. *See Corneil v. Morrison*, 33 N.M. 623, 274 P. 50 (1929); *See also Martinez v. Department of Human Resources*, 620 S.W.2d 805 (Tex.Civ.App.1981). The issue of paternity is a fact to be proved as any other fact. *In re Estate of Cook*, 40 Wash. App. 326, 698 P.2d 1076 (1985).

■ The weight, if any, to be given to the testimony of an expert witness upon a particular issue, and the resolution of conflicts between his opinion and other facts in issue, are matters to be resolved by the fact finder. *Sanchez v. Molycorp, Inc.; Martinez v. Martinez*, 101 N.M. 493, 684 P.2d 1158 (Ct.App.1984). *See also* NMSA 1978, UJI Civ. 2.13 (Repl.Pamp.1980).

■ Although scientific evidence based upon serologic testing is admissible in an

action to establish paternity, this evidence, together with expert opinion testimony derived from the test results, is not conclusive upon the fact finder. *State v. James*, 38 Wash.App. 264, 686 P.2d 1097 (1984). *See also Figueroa v. Juvenile Court*, 197 Colo. 510, 595 P.2d 223 (1979). *Cf. Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980). HLA tests constitute relevant evidence upon which opinion testimony may be presented indicating the statistical probabilities as to whether an alleged father is the actual father of the child in question. *State v. James.* The accuracy of serological tests depends upon the test procedures utilized, the skill and training of the testing officials, and the proper application of statistical methods used to interpret the test results. *Id. See also Imms v. Clark; Connell v. Connell*, 329 Pa.Super. 1, 477 A.2d 872 (1984); S. Schatkin & L. Andrews, *Disputed Paternity Proceedings*, § 11A.01 at 11A–1 (1985).

After HSD rested its case-in-chief, respondent moved for a directed verdict and the trial court granted the motion stating:

Thinking as much [concerning] the additional testimony that [respondent] would offer and the [respondent] has already testified basically with no other evidence in other than the testimony of the mother that yes, in fact, she did have sexual relations on two occasions with Mr. Coleman. The testimony of Mr. Coleman that the time was in December and January. Her testimony was variously that she left in March, that she left in April, that she wasn't sure. *I think what we've got is a swearing match unsubstantiated by the mother in this case.* It will be the finding of the court that Edward Coleman is not the father of the child. [Emphasis added.]

The trial court's ruling on the motion for directed verdict indicated that the mother's testimony was "unsubstantiated." Thereafter, the court in its written decision, adopted a single finding of fact, determining that "based upon testimony of witnesses called by Petitioner and evaluation of the credibility of such witnesses ... Petitioner has failed to demonstrate that it is more probable than not that Respondent is the father of the minor child * * *." This single finding of fact by the court referred only to *testimony* of the witnesses and not to documentary evidence. The trial court received into evidence five photographs of the child, the mother and respondent which were taken shortly after the child's birth. The trial court also denied HSD's requested finding of fact number five that, "[t]he results of the paternity blood testing and the testimony of the opinion of the expert who prepared the report *should have been admitted into evidence and considered by the Court.*" (Emphasis added.) The trial court did not adopt a finding specifically pertaining to the results of the paternity testing. The trial court's finding and statement casts doubt on the record as to whether the court considered Dr. Garner's opinion testimony concerning the blood test results, or the documentary items received into evidence. The refusal of a trial court to adopt a party's requested finding on an issue is ordinarily regarded on appeal as a finding against the party. *Worthey v. Sedillo Title Guaranty Inc.*, 85 N.M. 339, 512 P.2d 667 (1973).

The trial court's statement in its ruling on the directed verdict, the wording of its single finding, together with its denial of HSD's finding number five, leaves this court unable to determine on appeal whether the trial court, in fact, considered the expert opinion testimony of Dr. Garner as to the 99.5 percent statistical probability that respondent was the actual father of the child herein, based upon the paternity testing, or whether the court considered the exhibit admitted in evidence. Where doubt or ambiguity exists as to whether the trial court considered relevant evidence, or where other findings are required, the ends of justice require that the cause be remanded to the district court for the entry of additional findings and conclusions of law. NMSA 1978, Civ.P.R. 52(B)(1)(g) (Repl.Pamp.1980). *See also Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976). *Cf. Martinez v. Martinez.* Materi-

**506**

al evidence which is uncontradicted may not be arbitrarily disregarded in ruling on a motion to dismiss made at the close of a plaintiff's case. *Lorenzo v. Lorenzo*, 85 N.M. 305, 512 P.2d 65 (1973). *See also Frederick v. Younger Van Lines*, 74 N.M. 320, 393 P.2d 438 (1964).

### EXCLUSION OF EVIDENCE

 HSD also contends that the trial court improperly sustained general objections in excluding both oral and written evidence concerning the paternity testing and opinion evidence as to the test results. General objections voiced without specifying a particular basis for the objections are not favored on appeal. *Tobek v. United Nuclear-Homestake Partners*, 85 N.M. 431, 512 P.2d 1267 (Ct.App.1973). In objecting to evidence, it is the duty of an attorney to advise the court of the specific ground for the objection so that it may rule intelligently thereon. *See State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct. App.1982). The record indicates that the additional oral testimony, pertaining to the results of the paternity tests, sought to be elicited by HSD had in fact previously been received into evidence.

Counsel for HSD also sought to have admitted into evidence petitioner's exhibit number two, consisting of a letter written by Dr. Garner to an HSD official, summarizing his conclusions of the paternity test results, together with the statistical probability calculations based upon the serologic tests performed. Respondent's attorney objected to the admission of these documents on several grounds including the lack of a proper foundation. The trial court sustained the objections.

 The trial court properly excluded the tender of the written exhibit based upon an inadequate foundation. NMSA 1978, Evid.R. 104(a) (Repl.Pamp.1983). In the face of an objection, written reports are inadmissible as substantive evidence unless a proper foundation is established for the admission of the document, authenticating the writing, explaining the general contents of the document and indicating its

relevancy. Where a report involves an examination and analysis of substances taken from the human body, the court may require evidence indicating the nature of the item, the circumstances surrounding the testing of the item, and evidence indicating that the tests were free from mistake or tampering. *Cf. South v. Lucero*, 92 N.M. 798, 595 P.2d 768 (Ct.App.1979). *See also* Annot., 21 A.L.R.2d 1216 (1952). Preliminary questions concerning the adequacy of a foundation for the admission of documentary evidence rest within the sound discretion of the trial court. Evid.R. 104(a).

### CONCLUSION

 Since, on the basis of the record before us, we are unable to determine if the trial court properly considered the oral opinion testimony of Dr. Garner relating to the results of the paternity tests, including the statistical probability calculations drawn from the serologic testing, or whether the court considered other documentary exhibits in evidence, the cause is remanded to the trial court to adopt specific additional findings of fact and conclusions of law thereon, and for entry of an amended decision and judgment consistent with this opinion.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.