# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: _____**

**Filing Date: June 15, 2015**

**NO. 34,554**

**GEORGE ROBERT MILLER,**
**BARBARA JEAN MILLER, and**
**CHARLES RICHARD MILLER,**

Plaintiffs-Petitioners,

v.

**BANK OF AMERICA, N.A., as Trustee**
**of the Qualified Terminable Interest**
**Marital Trust and Family Trust created**
**under the Last Will and Testament of**
**Rudolph C. Miller, Jr., Deceased,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Beatrice J. Brickhouse, District Judge**

Tucker Law Firm, P.C.
Steven Lee Tucker
Santa Fe, NM

Catron, Catron, Pottow & Glassman, P.A.
Michael T. Pottow
Santa Fe, NM

for Petitioners

Keleher & McLeod, P.A.
Thomas C. Bird
Phil Krehbiel
Cassandra R. Malone
Albuquerque, NM

for Respondent

The Cullen Law Firm, P.C.
Christopher Cullen
Santa Fe, NM

Benjamin N. Cardozo School of Law
Melanie B. Leslie
New York, NY

for Amicus Curiae Trust Law Professors

**OPINION**

**DANIELS, Justice.**

{1}     The New Mexico Uniform Trust Code provides that when a trustee breaches its duty of care and causes a loss to the trust, that lost value must be returned to the trust as restoration damages. It also provides that when a trustee breaches its duty of loyalty by self-dealing, any profit from such self-dealing must be disgorged so that the trustee cannot profit from its wrongdoing. Restoration and disgorgement are not mutually exclusive, and recovery need not be limited to the amount of a beneficiary's loss if more is required to ensure that both remedial goals are met. Because it is unclear whether the principles of disgorgement and restoration have both been satisfied in this case, we remand to the district court to determine whether the profit wrongfully earned by the trustee was included in the restoration award to the beneficiary.

**I.     BACKGROUND**

{2}     In 2007, the remainder beneficiaries (Beneficiaries) of two testamentary trusts sued the defendant Bank of America (the Bank) for its actions as trustee from 1991 through 2003. Beneficiaries alleged that the Bank had invested trust assets in an unproductive commercial building in direct violation of express trust provisions and had thereby caused the loss of trust value in breach of its duty of care. Beneficiaries

also alleged that, as part of this investment, the Bank arranged loans to the trust from its own affiliates that were secured by mortgages on the building and collected loan fees and mortgage interest from the trust in breach of its duty of loyalty.

{3} At trial, Beneficiaries called Henry South to testify as an expert in accounting. South testified that the value of the trust, if the Bank had properly maintained the principal since 1991 and if that amount was adjusted for inflation to 2003 dollars, would have been approximately $894,000. Instead, the value of the trust principal by the reasonable presumed date of distribution was effectively zero. South was unable to reconcile the records to determine where the lost principal had gone, but he testified that "the only place it could have gone was back in the building" and that it was not used to pay "trustee fees or property management fees or something like that" because "[a]ll those were paid out of the rental income and the interest and dividends that were collected." He did not testify specifically about whether money from the trust principal had been used to pay the mortgage interest and loan fees to the Bank. The Bank did not call a witness to testify concerning the calculation of damages or present other evidence concerning these calculations.

{4} The district court found the Bank liable for multiple breaches of different duties under the New Mexico Uniform Trust Code and the specific trust agreement

but awarded Beneficiaries one lump sum of net damages. The court concluded that the Bank had engaged in improper self-dealing by making loans to the trust and had profited from the transactions by retaining interest and loan fees, and it ordered the disgorgement of this profit in the amount of $540,000. The court also ordered restoration of the lost trust value. It found that $894,000 was necessary to fully compensate the trust, which included an adjustment for inflation that was required to keep Beneficiaries whole. In its letter decision, the district court awarded both of these amounts and asked Beneficiaries' counsel to prepare the judgment.

{5} The Bank objected to Beneficiaries' proposed form of judgment, arguing for the first time that the award would provide "impermissible double recovery to Plaintiffs, by awarding Plaintiffs damages . . . to restore the trust and loan interest that the Trustee received." The Bank asserted that Beneficiaries' recovery must be limited to the amount of their loss and that New Mexico Uniform Trust Code provisions on damages for breach of trust, NMSA 1978, § 46A-10-1002 (2007), did not permit an award of both restoration and disgorgement, but the Bank did not discuss the actual method of calculation for the restoration award or argue that the interest had been included in those calculations. The district court accepted and signed the Bank's revised form of judgment that altered several findings and conclusions and changed

3

the amount of the damages awarded to $171,000. The resulting district court judgment was a mix of inconsistent findings and conclusions. The final damages award deducted the amount of income the Bank had disbursed to Beneficiaries during the time period at issue from the restoration amount, unadjusted for inflation, and did not include the disgorgement award. But the final judgment did not change the conclusion that ordered disgorgement or the finding that adjustment for inflation was required to keep Beneficiaries whole. The findings stated that the award "by definition includes $540,000 in loan interest paid to the Trustee" but did not explain or support this statement.

{6}     The Court of Appeals reversed the district court's decisions not to adjust for inflation and to offset income distributions against the damages award, and it awarded Beneficiaries $894,000 to restore the value of the Miller Trusts. *Miller v. Bank of America, N.A.*, 2014-NMCA-053, ¶ 47, 326 P.3d 20. The Court of Appeals held that restoration and disgorgement were alternative remedies, and it did not award an additional $540,000 on a disgorgement theory as requested by Beneficiaries because it "would amount to a double recovery and improperly impose a penalty on the Bank." *Id.* ¶¶ 44-45. Both parties petitioned this Court for certiorari, and we granted Beneficiaries' petition.

4

{7} Beneficiaries assert that disgorgement of profit is not an alternate remedy but is separately required under the New Mexico Uniform Trust Code because the Code does not limit an award to the amount of a beneficiary's loss. While we agree that both restoration and disgorgement are required and reverse the Court of Appeals conclusion on that issue, we remand to the district court for the determination of damages because it is unclear whether the mortgage interest and loan fees paid to the Bank were included in the calculation of the restoration award in this case.

## II.    STANDARD OF REVIEW

{8} "Disgorgement is an equitable remedy whereby a [defendant] is forced to give up the benefits obtained as a result of [the defendant's] wrongdoing." *Peters Corp. v. N.M. Banquest Investors Corp.*, 2008-NMSC-039, ¶ 32, 144 N.M. 434, 188 P.3d 1185. As an application of equity, "[t]he decision whether to order a defendant to disgorge profits and the amount of profits to be disgorged rests within the sound discretion of the trial court." *Id.* ¶ 32. "'An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason.'" *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 28, 329 P.3d 658. Such discretion . . . is a legal discretion to be exercised in conformity with the law.'" *Id.* (citation omitted). We review de novo "a discretionary decision that is premised on

5

misapprehension of the law." *New Mexico Right to Choose/NARAL v. Johnson*, 1999-NMSC-005, ¶ 15, 126 N.M. 788, 975 P.2d 841.

## III. DISCUSSION

{9} In 2003, New Mexico adopted the 2000 National Conference of Commissioners on Uniform State Laws (UL) Uniform Trust Code. New Mexico Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to -11-1105 (2003, as amended through 2011). The UL Uniform Trust Code largely codifies the common law of trusts. Unif. Trust Code Prefatory Note, 7C U.L.A. 364, 364 (2006). Beneficiaries argue that the history and purposes of this common law, as codified in Sections 46A-8-802 and 46A-10-1003(A) of the New Mexico Uniform Trust Code, require that disgorgement be ordered in every instance of trustee self-dealing. Where New Mexico trust law requires disgorgement, its denial is an abuse of the district court's discretion. *See B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 28.

**A. The New Mexico Uniform Trust Code Requires a Trustee to Disgorge All Personal Profit Because It Codifies the Strict Common Law Prohibition Against Self-Dealing**

{10} The common law of trusts strictly prohibited self-dealing by a trustee and would not allow a trustee to retain profit gained through such transactions.

> It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests

6

> of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. . . . It makes no difference that the estate was not a loser in the transaction, or that the commission was no more than the services were reasonably worth.

*Magruder v. Drury*, 235 U.S. 106, 119-20 (1914). This no-further-inquiry rule allowed a beneficiary to void a trustee's self-dealing transactions, whether or not the beneficiary suffered any loss. *See Iriart v. Johnson*, 1965-NMSC-147, ¶ 6, 75 N.M. 745, 411 P.2d 226 ("Courts do not inquire whether a broker who has violated his fiduciary duty has gained an advantage, or whether his conduct has been fraudulent. When the fact of such violation appears, the transaction is pronounced void as against public policy."); *Bogle v. Bogle*, 1947-NMSC-073, ¶ 5, 51 N.M. 474, 188 P.2d 181 ("The very fact that defendant loaned the money to himself constitutes self-dealing, and is frowned upon by the law regardless of fair dealing or . . . no loss to the trust estate."). The no-further-inquiry rule also includes accountability for profit. In *Iriart*, the plaintiffs were awarded the profit earned by a broker when he resold their land after buying it from them himself at a lower price and without full disclosure. *See* 1965-NMSC-147, ¶¶ 6-7 ("[T]he plaintiff is not limited to rescission [of the deed from the broker] where that remedy is inadequate . . . but may recover damages for

7

the broker's wrongful acts. . . . [T]he person so using the property is accountable for the profit . . . so made.").

{11} "The common law of trusts and principles of equity supplement the [New Mexico] Uniform Trust Code, except to the extent modified by" statute. Section 46A-1-106. Statutory construction is a matter of law, which we review de novo. *Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149 N.M. 215, 247 P.3d 736. In construing a statute, we determine and give effect to the Legislature's intent. *Id.* We look first to the plain language of the statute and give words their ordinary meaning unless the Legislature indicates a different one was intended, and we take care to avoid adopting a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction. *Id.*

{12} A statutory subsection may not be examined in a vacuum but must be considered in reference to the statute as a whole and to statutes dealing with the same general subject matter. *Id.* ¶ 11. "'[S]tatutes covering the same subject matter should be . . . construed together when possible in a way that facilitates . . . the achievement of their goals.'" *Id.* (alteration in original) (citation omitted). Uniform acts and the commentaries explaining those acts are often useful guidance in interpreting New Mexico law derived from a uniform code. *State ex rel. Dep't of Pub. Safety v. One*

8

*1990 Chevrolet Pickup*, 1993-NMCA-068, ¶ 15, 115 N.M. 644, 857 P.2d 44.

**1.      Sections 46A-8-802 and 46A-10-1003(A) of the New Mexico Uniform Trust Code Codify Common Law and Require That a Trustee Disgorge Profit**

{13}     The New Mexico Uniform Trust Code is consistent with the common law requirement that trustee profit be disgorged. Section 46A-8-802 concerns the duty of loyalty and codifies the common law no-further-inquiry rule.

> A trustee shall administer the trust solely in the interests of the beneficiaries. . . . [A] sale, encumbrance or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or that is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction . . . .

Section 46A-8-802(A)-(B).

{14}     Under the plain language of this provision, a transaction involving a conflict of interest in breach of the duty of loyalty is voidable at the beneficiary's option, and voiding such a transaction will require the trustee to disgorge personal profit gained through the breach if that profit would not have been earned had the transaction never occurred. Our case law clarifies that the beneficiary is entitled to this profit, even where the transaction did not cause any loss to the trust. *Iriart*, 1965-NMSC-147, ¶ 7 ("[T]he plaintiff is not limited to rescission [of the transaction] where that remedy is inadequate . . . [and] the person so using the property is accountable for the profit

9

. . . so made.").

{15}    Section 46A-10-1003(A) further supports the requirement of mandatory disgorgement, stating, "A trustee is accountable to an affected beneficiary for any profit made by the trustee arising from the administration of the trust, even absent a breach of trust." Although entitled "Damages in absence of breach," the plain language of this section, in its use of the term "even," suggests that a trustee is always accountable for personal profit. *Id.*

{16}    Our review of the UL Uniform Trust Code on which New Mexico's law is based confirms this reading. Section 46A-10-1003(A) is identical in wording to Section 1003(a) of the UL Uniform Trust Code, and comments to Section 1003 state the following:

> The principle on which a trustee's duty of loyalty is premised is that a trustee should not be allowed to use the trust as a means for personal profit other than for routine compensation earned. While most instances of personal profit involve situations where the trustee has breached the duty of loyalty, not all cases of personal profit involve a breach of trust. Subsection (a), which holds a trustee accountable for any profit made, even absent a breach of trust, is based on Restatement (Second) of Trusts Section 203 (1959).

Unif. Trust Code § 1003(a) & cmt., 7C U.L.A. 648 (2006).

{17}    The Restatement (Second) of Trusts in turn provides, "The trustee is accountable for any profit made by him through or arising out of the administration

10

of the trust, although the profit does not result from a breach of trust." Restatement (Second) of Trusts § 203 at 455 (1959). Comments to Section 203 of the Restatement (Second) of Trusts confirm that a trustee may not retain any personal profit, whether or not there has been a breach.

> If the trustee enters into a transaction in connection with the administration of the trust for the purpose of acquiring a profit for himself in violation of his duty of loyalty to the beneficiary, he commits a breach of trust . . . . Even if he enters into the transaction without intending to make a profit for himself and commits no breach of trust in so doing, nevertheless he is not permitted to retain the profit. Thus, if the trustee receives a commission or bonus for acts done in connection with the administration of the trust, he is accountable therefor, even if he does not commit a breach of trust in receiving the commission or bonus.

*Id.* cmt. a. We conclude that the plain language of Sections 46A-8-802 and 46A-10-1003(A) of the New Mexico Uniform Trust Code prohibits a trustee from retaining personal profit.

**2.    Section 46A-10-1002(A) of the New Mexico Uniform Trust Code Does Not Conflict with the Statutory Requirement of Disgorgement**

{18}    Section 46A-10-1002(A) does not contradict the common law rules codified in Sections 46A-8-802 and 46A-10-1003(A). Whenever possible, we will read statutes in harmony, to give effect to all provisions. *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. Section 46A-10-1002(A) does provide alternative remedies:

11

A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of:

(1)     the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or

(2)     the profit the trustee made by reason of the breach.

Section 46A-10-1002(A) is identical in wording to Section 1002(a) of the UL Uniform Trust Code, and comments to that section state,

If a trustee commits a breach of trust, the beneficiaries may either affirm the transaction or, if a loss has occurred, hold the trustee liable for the amount necessary to compensate fully for the consequences of the breach. This may include recovery of lost income, capital gain, or appreciation that would have resulted from proper administration. Even if a loss has not occurred, the trustee may not benefit from the improper action and is accountable for any profit the trustee made by reason of the breach.

Unif. Trust Code § 1002(a) & cmt., 7C U.L.A. 646 (2006). Section 1002(a) of the UL Uniform Trust Code "is based on [the] Restatement (Third) of Trusts: Prudent Investor Rule Section 205, at 154-55 (1992)." Unif. Trust Code § 1002 cmt. The Prudent Investor Rule provides alternative remedies, but it clarifies the alternatives as trustee accountability for "any profit accruing to the trust" and as trustee liability for "the amount required to restore the values" lost by the trust; in addition, it holds a trustee liable as needed to prevent personal benefit. Restatement (Third) of Trusts: Prudent Investor Rule § 205, at 154-55 (1992).

12

{19} Comments to the Prudent Investor Rule specifically state that a beneficiary may affirm a trustee's profitable breach and hold the trustee accountable for the resulting profit accruing to the trust, or if a breach instead causes a loss, may surcharge the trustee for the amount necessary to compensate the trust fully. *See id.* cmt. a, at 155. Either choice does not "preclude a court from granting other remedies available for fiduciary misconduct . . . when appropriate." *Id.* at 155-56. Although Section 46A-10-1002(A) is worded differently than the Prudent Investor Rule, it is identical in wording to Section 1002(a) of the UL Uniform Trust Code, and so the wording difference is not indicative of any legislative intent to change the meaning of the New Mexico statute. The alternatives in Section 46A-10-1002 do not apply to a trustee's wrongful personal profit. This interpretation allows Section 46A-10-1002(A) to be read in harmony with Section 46A-8-802 and Section 46A-10-1003 and with the common law of trusts.

{20} We hold that the New Mexico Uniform Trust Code requires a trustee to disgorge all personal profit.

**B.      Restoration and Disgorgement Are Motivated by Separate Remedial Principles and May Be Awarded Together**

{21} Loss to Beneficiaries and profit by the Bank are distinct harms that traditionally give rise to different types of damages: restoration and disgorgement. Each has its

13

own remedial purpose, and both may be awarded if necessary to satisfy each purpose fully by compensating the trust and removing all profit from the Bank's self-dealing.

{22} Although it is an equitable remedy, the measure of disgorgement is the amount of a defendant's gain, and a beneficiary need not suffer any loss at all to be entitled to the remedy. *See* NMSA 1978, § 46A-10-1003(A) ("A trustee is accountable to an affected beneficiary for any profit made by the trustee arising from the administration of the trust, even absent a breach of trust."); *Bogle*, 1947-NMSC-073, ¶ 5 ("The very fact that defendant loaned the money to himself constitutes self-dealing, and is frowned upon by the law regardless of . . . no loss to the trust estate.").

{23} Disgorgement is not intended to compensate beneficiaries but to prevent unjust enrichment of the trustee and to deter that trustee and others from similar misconduct. *See* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 543, at 235, 241 (Rev. 2d ed. 1993) ("[W]here the trustee, while engaged in a business transaction for the trust, attempts at the same time to secure a financial advantage for himself . . . [,] this is usually forbidden as self-dealing. Penalties and other remedies are provided in order to deter trustees from entering into such transactions and to take from them all benefits derived from their disloyalty." (internal quotation marks and citation omitted)); 1 Dobbs, Law of Remedies § 3.1, at

280 (2d ed. 1993) ("Restitution . . . begins with the aim of preventing unjust enrichment of the defendant."). Damages for unjust enrichment differ from compensatory damages in that "[t]he measure [and limit] of compensatory damages is the plaintiff's loss or injury, while the measure of restitution is the defendant's gain or benefit." *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶¶ 12, 17-18, 121 N.M. 840, 918 P.2d 1340; 1 Dobbs, *supra*, § 3.1, at 280 ("To measure damages, courts look at the plaintiff's loss or injury. To measure restitution, courts look at the defendant's gain or benefit."). Because it is measured by the defendant's gain, a disgorgement award cannot be limited to the amount of loss sustained by a beneficiary. We agree with Beneficiaries that under New Mexico trust law, damages need not be limited to the amount necessary to make a beneficiary whole, at least when that amount would not result in complete disgorgement.

{24}    A damage award including both diminution in value attributable to breach and disgorgement of profit is not necessarily a double recovery and may be justified under certain circumstances. *See Cmty. Hosp. of Springfield & Clark Cnty., Inc. v. Kidder, Peabody & Co.*, 81 F. Supp. 2d 863, 874-75 (S.D. Ohio 1999) (affirming an arbitrator's award of both the decline in portfolio value and the value of undisclosed markups charged by a brokerage for excess trades benefitting the broker and not the

15

client). The court in *Kidder, Peabody & Co.* found "two distinct harms for which the client [was] entitled to separate compensation" and determined that there was no double counting involved because the portfolio decline award was based on profit the client would have earned had its funds been properly invested while the disgorgement award was based on the profits earned by the broker on the improper securities trades. *Id.* at 874. Because these improperly earned profits were not included in the calculation of the decline in portfolio value, both awards were needed to accomplish compensation and full disgorgement. *Id.* Other cases have held similarly, requiring both compensation and disgorgement when those awards are based on separate sums of money. *See, e.g.*, *Tanzer v. Huffines*, 314 F. Supp. 189, 192, 195-96 (D. Del. 1970) (holding that it was not duplicative to force fiduciaries to disgorge personal profits earned through the wrongful use of company assets and to compensate for the company's loss of those assets); *Gerdes v. Reynolds*, 30 N.Y.S.2d 755, 760-61 (N.Y. Sup. Ct. 1941) (holding corporate directors liable for both the profits they earned by transferring control of the corporation to others and for the losses suffered by the corporation when those transferees looted its assets). The Bank must disgorge its profits. If the mortgage interest and loan fees paid to the Bank were not included in the calculation of the restoration award based on the decline in value of the trust

16

principal, then an additional disgorgement award is required.

{25}     However, disgorgement is not a punitive remedy. *Peters Corp.*, 2008-NMSC-039, ¶ 32. Beneficiaries and Amicus argue that Beneficiaries are entitled to disgorgement whether or not the Bank's interest profits were included in the restoration calculations because the Bank would still have been fully liable for lost trust value had it only managed the trust poorly. If the Bank had obtained the loans from another party and had not engaged in self-dealing where it wrongfully earned the interest itself, it would have suffered loss to its bottom line of the full restoration amount. But the Bank avoids such loss where the profits were included in the restoration calculations, and it is only required to return the interest it gained through its self-dealing. We recognize this result but emphasize that a disgorgement award must be premised on wrongful conduct that results in a benefit to the defendant and extends only to the amount of gain the defendant derived from the prohibited conduct. *Id.* ("The touchstone of a disgorgement calculation is identifying a causal link between the illegal activity and the profit sought to be disgorged. . . . The court's power to order disgorgement extends only to the amount . . . by which the defendant profited from his wrongdoing." (second alteration in original) (internal quotation marks and citations omitted)). Here, the prohibited conduct was self-dealing, and the

profit to the Bank from this conduct was the $540,000 in loan fees and mortgage interest. The deterrence contemplated by the disgorgement remedy is aimed at preventing this wrongful profit and is not intended to ensure a loss, even if that loss would have occurred absent the self-dealing. *See Am. Master Lease LLC v. Idanta Partners, Ltd.*, 171 Cal. Rptr. 3d 548, 576 (Ct. App. 2014) ("[T]he profit for which the wrongdoer is liable . . . is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong." (internal quotation marks and citation omitted)). If the mortgage interest and loan fees were included in the calculation of the restoration award, that award requires the Bank to disgorge its profit with no increase in its assets remaining. The remedy of disgorgement does not require deterrence beyond the prevention of this increase.

{26}     The resolution of this case depends on the calculations used to determine the decline in value of the trust principal awarded to Beneficiaries as restoration damages. If the calculations included the mortgage interest and loan fees, the Bank does not need to pay these amounts twice. However, if the losses to the trust did not include these amounts, the Bank must still disgorge its wrongful profits. In its findings of fact the district court stated that the diminution in value of the trust principal "by definition includes $540,000 in loan interest paid to the Trustee."

Beneficiaries argued on appeal that "the disgorgement award is neither nullified by, nor contained in, the award for restoration damages" but did not specify how the evidence in the record failed to support a finding that the disgorgement award was, factually, contained in the award for restoration damages. A factual finding not challenged on appeal is binding on this Court. *See* Rule 12-213(A)(4) NMRA ("The argument shall set forth a specific attack on any finding, or such finding shall be deemed conclusive. A contention that a verdict, judgment or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence.").

{27} However, Beneficiaries did set forth their own proposed findings in the district court and challenged the legal conclusion that disgorgement should not be awarded. It is unclear whether the district court's statement that its award "by definition include[d]" disgorgement was based on a finding of fact or a conclusion of law. "[F]indings of fact and conclusions of law are often indistinguishable, and . . . a reviewing court is not bound by a designation as a finding." *Smith v. Maldonado*, 1985-NMSC-115, ¶ 7, 103 N.M. 570, 711 P.2d 15 (internal citations omitted). Although labeled as a finding, the phrase "by definition includes the . . . loan interest"

was not explained or supported with any evidence, and the arguments of the parties concerned only the legal limits to recovery under the New Mexico Uniform Trust Code. The Bank specifically told the judge, "[T]hese are not findings. This is a matter of law." This Court is not bound by a district court's determination when it is unclear whether that decision is a finding of fact or a conclusion of law. *See Madrid v. Rodriguez* (*In re Estate of Duran*), 2003-NMSC-008, ¶ 14, 133 N.M. 553, 66 P.3d 326 ("We are not bound, however, by the trial court's legal conclusions and may independently draw our own conclusions of law on appeal." (internal quotation marks and citation omitted)); *Wine v. Neal*, 1983-NMSC-087, ¶¶ 7-11, 14, 100 N.M. 431, 671 P.2d 1142 (concluding that a judgment that a tax sale was conducted without notice was not binding on appeal despite the lack of challenge to factual notice because whether the judgment was a finding of fact or a legal conclusion was unclear).

{28}     Although we are not bound to conclude that the restoration award included the mortgage interest and loan fees, the record will not allow this Court to resolve this issue on appeal. At trial, Beneficiaries' expert testified that he was unable to account for the decline in value of the trust principal and could not determine where the money had gone but that "the only place it could have gone was back in the building"

20

and that it did not go to "trustee fees or property management fees or something like that" because "[a]ll those were paid out of the rental income and the interest and dividends that were collected on the monies being invested." He did not specifically mention mortgage interest, and the court did not make any findings about whether that interest had been paid out of trust principal or trust income. Payments from trust principal would have contributed to its decline in value, and disgorgement would be accomplished by restoration of the amount of that decline. But if the interest was paid out of trust income, restoration of the principal would not disgorge that profit.

{29}   Mortgage interest is considered an ordinary building expense like insurance or regular maintenance and should generally be charged to trust income and balanced against the rental income earned by a property, not paid out of trust principal. *See* Bogert, *supra*, § 603, at 560 ("Interest on mortgages should ordinarily be paid out of trust income."). The Bank included mortgage interest as negative entries on tax forms used to report rental income and listed interest payments on annual statements as being charged to trust income. However, the district court found that the Bank's records were "rife with error and unreliable," no testimony on this issue was presented by the parties, it was never clearly argued, and the district court did not make any specific findings as to whether the mortgage interest had actually been paid

21

out of trust income or trust principal.

{30} "[T]his Court is not a fact-finding body." *State ex rel. King v. UU Bar Ranch Ltd. Partnership*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816. "We therefore think the fairest solution is to remand to the district court for an opportunity to clarify its findings and conclusions." *Herrington v. State of N.M. ex rel. Office of State Engineer*, 2006-NMSC-014, ¶ 36, 139 N.M. 368, 133 P.3d 258; *see also State ex rel. Human Servs. Dep't v. Coleman*, 1986-NMCA-074, ¶ 26, 104 N.M. 500, 723 P.2d 971 (stating that where ambiguity or doubt exists as to the trial court's findings of fact the appellate court can remand when the ends of justice so require), *abrogated on other grounds by State v. Alberico*, 1993-NMSC-047, ¶ 2, 116 N.M. 156, 861 P.2d 192; *Foutz v. Foutz*, 1990-NMCA-093, ¶¶ 16, 21, 110 N.M. 642, 798 P.2d 592 (vacating a judgment because the findings were insufficient for meaningful review). "[I]t is the trial court's duty to make findings of the essential or determining facts, on which its conclusions in the case w[ere] reached, specific enough to enable this court to review its decision on the same grounds as those on which it stands." *Apodaca v. Lueras*, 1929-NMSC-041, ¶ 9, 34 N.M. 121, 278 P. 197.

**IV.    CONCLUSION**

{31}    Both disgorgement of ill-gotten gains by a trustee and restoration of losses to

a trust suffered as a result of a trustee's wrongdoing are required by the New Mexico Uniform Trust Code, and we reverse the Court of Appeals on this issue. Because it is not clear from the record whether the $894,000 awarded by the Court of Appeals accomplishes both restoration and disgorgement, we remand to the district court to determine whether the mortgage interest and loan fees paid to the Bank were included in the calculation of loss to the trust principal, and to enter an appropriate damages award based on this determination.

{32}    **IT IS SO ORDERED.**


_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

24